No. 83-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

PRICE BUILDING SERVICE, INC.,

Plaintiff and Respondent,

-vs-

A. J. HOLMS, and PHYLLIS C. HOLMS,
his wife, ALLAN G. HOLMS and
MARILYN HOLMS, his wife, et al.,

Defendants and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Datsopoulos, MacDonald & Lind; Edward A. Murphy,
Missoula, Montana

For Respondent:

Snavely and Phillips; Robert J. Phillips, Missoula,
Montana

Submitted on Briefs: April 26, 1984

Decided: January 4, 1985

Filed: JAN 4 - 1985

*Ethel M. Harrison*

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendants A. J. Holms, Phyllis C. Holms, Allan G. Holms and Marilyn Holms, who are the contract owners and lessors of land and a commercial building, and Harold Rhines, James L. Rhines, and Gloria Rhines, who are the lessees of land and a commercial building, known as Sound West, appeal a judgment of the Missoula County District Court foreclosing a mechanics lien in favor of plaintiff, Price Building Service, the contractor who extensively remodeled the building on the land. Price Building Service (the contractor) cross-appeals from the judgment, the effect of which was to deny recovery for prejudgment interest and attorney fees. We affirm the judgment directing foreclosure of the mechanic's lien and reverse the judgment on interest and attorney fees, and remand for a determination of the interest and attorney fees.

Defendants raise five issues, the first two involving the technical sufficiency of the mechanic's lien. First, they contend that the lien is deficient because although it contains a legal description of the land, it fails to describe the building itself. Second, they contend the lien is deficient because it fails to correctly identify either the lessors or lessees as the owners of the property to which the lien attached. Third, the lessors contend that although the contractor was not a party to the agreement, the lessors agreed with the lessees to pay for improvements up to $25,000.00 and that the contractor cannot recover any more from the lessor. Fourth, one of the lessees, Harold Rhines, contends that the trial court erred in holding that he and the other lessees were partners, and therefore that Rhines is

- 2 -

liable as a partner. Fifth, the lessors argue that the trial court erred in refusing to admit for general evidentiary purposes two exhibits prepared with the objective of showing the actual value of the remodeling work performed by the contractor.

In April, 1973, under a contract for deed, the Holms' purchased portions of several lots and a commercial building on those lots. Four months later, in August 1973, the Holms' in turn leased this property and a building, to Harold Rhines and his son, James L. Rhines, and daughter-in-law, Gloria A. Rhines. The lease contained an option to purchase and also contained a stipulation that the Holms as lessors would pay the first $25,000.00 of anticipated remodeling expenses and the Rhines' as lessees, would pay all remodeling expenses beyond $25,000. The building was to be extensively remodeled to house what is known as Sound West, a retail stereo equipment store. The parties, by oral contract, and without asking for a formal bid, employed Price Building Service to do the remodeling work.

The contractor started work in late August, 1973, and finished it during the week ending January 2, 1974. Before the work was completed, the contractor became concerned over payment of the bill, and Harold Rhines assured the contractor that the bill would be paid when the remodeling was completed.

When the remodeling was completed the contractor submitted a bill for $55,579.12. Two months later, on March 26, 1974, after the lessors and lessees had not paid anything on the bill, the contractor filed a mechanic's lien on the property. In describing the property, in addition to the legal description, the lien referred to ". . . that certain

building and improvements erected upon" the described proper-
ty. In addition, along with the formal lien, was filed a
statement of account for "Sound West," the name of the busi-
ness operating from the remodeled building.

Six or eight months after the contractor filed the
mechanic's lien, the Holms paid $22,000.00 to the contractor,
but that is all. In September, 1974, after the mechanic's
lien had been filed, James L. and Gloria A. Rhines exercised
their option to purchase the property, subject of course, to
the contractor's mechanic's lien. They signed a contract for
deed with the Holms'. Harold Rhines, the father of James
Rhines, provided the financing for James and Gloria Rhines to
purchase the property.

The case finally went to trial on the lien foreclosure
action, and the Holms' and Rhines defended in part on the
ground that the contractor had not performed according to
requirements and therefore that the property was in some
respects, defective. As part of the defense the Holms' and
Rhines' offered in evidence two documents that consisted of
construction estimates or bids prepared according to the
remodeling plans, and figured in 1983 dollars, rather then in
1973 dollars when the remodeling was done. Witnesses who
prepared those bids for purpose of trial testified that the
bids did not include all of the materials and labor provided
by the contractor in actually doing the remodeling. The
defendants also did not lay proper foundation concerning the
inflation rate between 1973 and 1983--a ten year span. The
trial court refused one exhibit and admitted one for the
limited purpose of showing the kind and quantity of materials
necessary to perform the remodeling.

- 4 -

The trial court ordered foreclosure of the lien in the amount of $33,579.12, but also ordered this amount to be offset in the sum of $2,740.00 for defects in the contractor's performance. The judgment failed to include prejudgment interest and attorney fees, and attorneys for the contractor moved to amend the findings and conclusions to include these items. The trial court, however, failed to rule on this motion within the time requirements specified by Rule 59(d), M.R.Civ.P., and the motions were therefore deemed denied. Although the trial court had no authority to do so because of the operation of Rule 59, the court amended the judgment to include prejudgment interest and attorney fees. For purposes of appeal we therefore treat the motion to amend the findings and conclusions as being denied, and we consider this issue as part of the contractor's cross-appeal.

The lessors and lessee's first attack the validity of the mechanic's lien by contending that it failed to describe the building and instead merely described the land. But that is not the case. The lien specifically referred to the building on the land, and the evidence disclosed that only one building was on the land, the one on which the contractor performed the work. Clearly this would enable one familiar with the locality to point the building out as the one corresponding to the description contained in the lien. Under Varco-Pruden v. Nelson (1979), 181 Mont. 252, 593 P.2d 48, this was sufficient. Furthermore, under our holding in General Electric Supply Company v. Bennett, (Mont. 1981) 626 P.2d 844, 38 St.Rep. 553, the statement of account filed with the lien, and referring to "Sound West," would leave little doubt as to the building referred to.

Hon. Daniel J. Shea
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

February 6, 1985

Price Building Service, Inc. v. Holms, No. 83-533, Jan. 4, 1985

Page 6, line 8 from bottom --- Montana Farm Service Co. v. Marquart should read Montana Farm Service Co. v. Marquart.

Page 11, line 6 from bottom --- 94 Mont. 97 should read 94 Mont. 57.

Page 13, line 6 --- 108 Mont. 97, 20 P.2d 622 should read 108 Mont. 57, 90 P.2d 489.

Page 15, line 12 --- 406 P.2d 455 should read 506 P.2d 455.

Page 16, line 10 --- § 71-13-124 should read § 71-3-124.

Page 16, line 11 --- 171 Mont. 382 should read 171 Mont. 383.

**WEST PUBLISHING COMPANY**
Box 43526
St. Paul, MN 55164

The second attack on the validity of the lien is a contention that the contractor failed to correctly identify either the Holms' or the Rhines' as the owners of the property to which the lien attached. As this Court held in Blose v. Havre Oil and Gas Company (1934), 96 Mont. 450, 31 P.2d 738, it is important that the lien identify the name of the owner against whose property the lien is filed so that third parties examining the public records can find an encumbrance more easily. Here the lien referred to the Harrisons, from whom the Holms were buying the property, and to the Holms' the contract for deed purchasers. The Rhines' did not have to be mentioned because at the time the lien was filed they had not yet exercised their option under the lease agreement with the Holms'. The lien, in referring to the Harrisons and Holms' as the owners of the property, was correct.

Third, Harold Rhines, as one of the lessees, contends he was not a partner in the Sound West enterprise, and that the trial court's finding that he was a partner, and therefore liable to the contractor on the remodeling contract, was in error. One may become a partner of a firm, as to the third persons, without intending to, by words spoken or written or by conduct, and thereby became liable to those who have in good faith given credit to the actual or apparent partnership. Montana Farm Service Co. v. Marquart (1978), 176 Mont. 357, 578 P.2d 315. During construction, when the contractor expressed concern over the payment of the bill, Harold Rhines personally assured him that the bill would be paid when the remodeling was completed. Harold Rhines also asked the contractor for personal notification by registered mail when the remodeling expenses exceeded $25,000.00. Further, Harold Rhines signed the lease and assumed its benefits and burdens,

- 6 -

including a promise to pay for any remodeling costs exceeding $25,000.00 The contractor testifed that Harold Rhines had notified him that the Rhines would be paying all expenses over $25,000.00. Whether or not Harold Rhines was technically a partner of James Rhines, his words and conduct reasonably led the contractor to believe he was, and the contractor therefore continued to remodel upon Harold Rhine's assurance of payment. As to the contractor, Harold Rhines was a partner, and therefore liable on the remodeling contract.

Fourth, the lessors and lessees contend the trial court erred in excluding two bids that were offered to prove that the contractor overcharged for materials and labor. The court ruled the bids were irrelevant because they lacked the proper foundation and were incomplete. The witnesses who prepared the bids admitted that the bids did not include all of the materials and labor provided by the contractor. Further, the lessors and lessees failed to lay a proper foundation as to the inflation rate between 1973, when the remodeling was performed and 1983, when the bids were prepared. The bids were prepared in 1983 dollars rather than 1973 dollars. One bid was admitted for the limited purpose of showing the kind and quantity of materials necessary to perform the remodeling. The bids clearly lacked the proper foundation and were incomplete, and the trial court did not err in excluding them from evidence.

Fifth, the lessors (the Holms'), in seeking to limit their liability, contend they are liable only to the extent of $25,000.00 because they agreed with the lessees to pay only the first $25,000.00 remodeling costs. However, the contractor was not a party to this contract and at the time

the work was done the lessors were the contract owners of the property. The judgment is against the lessors and lessees, and the contractor can look to either or both in seeking to satisfy the judgment. The agreement between the lessors and lessees on sharing improvement costs is a matter to be settled only between the lessors and lessees, as the contractor was not a party to that contract and is not bound by its terms.

CROSS-APPEAL

The contractor asked the trial court to award prejudgment interest based on § 27-1-211, MCA, and attorney fees based on § 71-3-124, MCA. In the original findings and conclusions, however, for reasons unexplained, the trial court expressly declined to rule on these requests but suggested that the contractor again raise these issues by filing a motion to amend the findings and conclusions. The contractor did so, but the trial court failed to rule on the motion within the fifteen-day cut-off limit of Rule 59, M.R.Civ.P., and therefore the motions were deemed denied as a matter of law. After it was too late to rule, the trial court did file amended findings and conclusions, together with a memorandum opinion, and awarded prejudgment interest and attorney fees. But this order had no effect because it came after the time to rule had expired. The contractor, therefore, has cross-appealed on these issues, contending that prejudgment interest and attorney fees should be awarded. We agree.

PREJUDGMENT INTEREST

The contractor originally submitted a bid in the $36,000.00 range; however, the construction was not based on a bid price, but on a cost-plus arrangement. The lessor-lessees were to pay the contractor his costs for labor

and materials plus 12 percent. Throughout the construction stages the contractor sent periodic statements detailing his labor and material costs. However, before construction was completed, certain construction changes were made. Although the lessor-lessees contended the contractor caused the need for the changes, the trial court found they were done at the request of the lessee. At the end of the project in 1974, the contractor sent a final bill for $55,579.12. It was not paid and a few months later in 1974 the contractor filed a mechanics lien for the amount owed. Six to eight months after the lien was filed, the lessor paid $22,000.00 on the account. When no further payments were made by 1975, the contractor filed suit to foreclose on the mechanics lien.

Nothing was done on the suit until 1979 when a deposition was taken. Little was done after this and the case did not come to trial until 1983, almost nine years after the completion of the construction project. The record reveals that the contractor did not diligently pursue his claim but also reveals that the lessor-lessees did not ask for a speedy resolution of this matter. They were content to let the case remain inactive.

The trial court found the lessor-lessees owed $55,579.10, less the $22,000.00 paid six months after the lien was filed, and less $2,740.00 for defective workmanship. The balance found owing was determined to be $30,893.12 (it should actually be $30,839.12). In his cross-appeal the contractor contends that under § 27-1-211, MCA, he is entitled to prejudgment interest on the $30,839.12 at the statutory rate of 6 percent (§ 31-1-106, MCA), and that for foreclosure of the lien he is entitled, under § 71-3-124, MCA, to attorney fees.

- 9 -

If a claim is certain or can be ascertained by calculation, § 27-1-211, MCA, allows prejudgment interest. The statute sets forth only two exceptional circumstances in which interest need not be paid. The statute provides:

> "Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest from that day <u>except during such time as the debtor is prevented by law or by act of the creditor from paying the debt</u>." Section 27-1-211, MCA. (Emphasis added.)

The contractor primarily argues that the claim was certain or capable of being made certain by calculation, and that the right to recover vested when the final bill was sent to the lessor-lessees. The lessor-lessees, on the other hand, advance several reasons to counter the contractor's certainty argument. In addition, they argue that interest should be disallowed because the contractor failed to diligently prosecute his claim in court. They argue it is unfair to permit interest over all these years when it was the plaintiff who failed to prosecute his claim to completion. We deal first with the failure to prosecute contention.

The statute is clear. If the claim is certain or can be made certain by calculation, interest must be allowed unless the lessor-lessees were prevented by law from paying the debt or the contractor prevented them from paying the debt. These are the only conditions excusing the payment of interest. Federal Land Bank v. Green (1939), 108 Mont. 56, 67, 90 P.2d 489. Neither of these conditions exists here.

Nor can we accept the argument that as an equitable matter the contractor's lack of diligence in taking the case to trial must invalidate the operation of the prejudgment

interest statute.  This is not one of the conditions which excuse the payment of interest under the statute.  Furthermore, the record is just as clear that the lessor-lessees did nothing to obtain a speedy resolution of this matter.  They were instead content to let the case remain inactive with the result that they had the use of over $30,000.00 of the contractor's money for almost ten years.  Had they borrowed this money from any financial institution, they most certainly would have been paying a much higher rate of interest.  And by not pressing the case to trial themselves, they helped delay entry of judgment, at which time a judgment would have carried interest at the rate of 10 percent per year (§ 25-9-205, MCA), as opposed to the legal rate of interest here of 6 percent per year.  They clearly benefited from the delay of trial and delay of judgment.

The lessor-lessees also argue several factors, which, they contend, made it impossible for them to determine the damages or the amount owed to the contractor.  It is not clear whether they contend any one of these factors was sufficient to disallow prejudgment interest, or whether the cumulative effect of these factors required a disallowance of prejudgment interest.  First, they seem to argue that prejudgment interest is allowed only where there is an account stated or where a fixed contract price has been set for full performance.  They rely (and improperly so) on Eskestrand v. Wunder (1933), 94 Mont. 57, 20 P.2d 622.  With this as their premise, they argue that prejudgment interest must be disallowed here because the complaint was instead based on the value of the labor and materials plus 12 percent.  They do not say why they were unable to determine whether the contractor's bill for $55,579.12 was correct--a figure found by

the trial court to be correct. Second, they argue that their $25,000.00 counterclaim for construction delay damages and their $7,000.00 counterclaim for defective performance damages, made it impossible for them to determine the amount owed to the contractor. Third and finally, they contend the contractor created the uncertainty of determining the final amount owed because his faulty construction created a continuing fluctuation in the amount claimed and also increased the amount claimed. They argue that uncertainty inheres in this situation because it remained for the trial court to determine whether the changes and additional expenses were caused by the contractor's defective performance of by their constant changes of the job specifications.

Contrary to the lessor-lessees' assertions, Eskestrand v. Wunder, supra, does not hold interest can be awarded only where there is an account stated or where there is a fixed contract price at the inception of the construction which has not been changed. The statute merely requires that the damages be certain, or capable of ascertainment by calculation. Here the contract was for costs of labor and materials plus 12 percent. The total of this figure was $55,579.12, this was the bill given to the lessor-lessees, and this was the figure which the trial court found to be correct.

Furthermore, the dispute over part of the claim here did not convert the contractor's claim into one on which prejudgment interest would not run. A dispute on the amount owed on part or all of a claim in the form of a denial of part or all of the amount owed, or in the form of a counterclaim for construction delay and defective performance, does not transform a plaintiff's claim into one that does not bear

- 12 -

prejudgment interest. It is the nature of the complaint rather than the character of the defense that determines the right to prejudgment interest. City of Seattle v. Dyad Const., Inc. (Wash.App. 1977), 565 P.2d 423. In fact, this Court held in Federal Land Bank v. Green (1939), 108 Mont. 57, 90 P.2d 489, that the right to prejudgment interest was not defeated where the amount stated in filing a lien was overstated, as long as the correct amount constituting the debt was ascertainable. And in Farrington v. Freeman (Minn. 1959), 99 N.W.2d 388, the court held a plaintiff's claim for prejudgment interest was not defeated because the defendant had filed an unliquidated counterclaim for costs of remedying defects in plaintiff's work. These cases expressly or implicitly recognize that the right to prejudgment interest should not be cut off by the simple defensive move of claiming an offset or filing a counterclaim that directly or indirectly creates an issue as to the amount owed. The statute creating the right to prejudgment interest was not meant to be nullified by the mere existence of such defensive pleadings.

The existence of a valid contest on the amount owed can, however, affect both the amount awarded to the plaintiff on the main debt and the amount of prejudgment interest awarded. If the amount owed is reduced by a valid setoff or counter-claim, interest is then normally allowed only on the balance due after deductions of the offsetting amounts and payments that may already have been made. Hanson v. Covell (Cal. 1933), 24 P.2d 772. In fact, that is what the trial court did in this case. It found the amount owed to be $55,579.12, that $22,000.00 had already been paid, and that this amount should be further reduced by $2,740.00 allowed for defective

- 13 -

performance. As we noted before, however, the trial court's decision on the prejudgment interest question came too late to constitute a decision favoring an allowance of prejudgment interest.

The prejudgment interest statute, in existence since 1895, merely sets forth a broad area in which the legislature has determined prejudgment interest should be allowed as a matter of right with the exception that it need not be paid if a law has prevented the debtor from paying the debt or if the creditor has done something to prevent the debtor from paying the debt. It is merely part of the law of damages that has, as its objective, that of making the injured person whole.

Though the statute also requires the amount to be certain or determinable by calculation, when considered with the other statute vesting discretionary power in the trier of fact to award prejudgment interest in almost all other situations (§ 27-1-212, MCA), it is clear that the legislature intended prejudgment interest under § 27-1-211, MCA, to be the rule rather than the exception. Section 27-1-212, on the other hand, deals with an award of prejudgment interest in all situations "not arising out of contract." It provides:

> "In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury. This section does not apply in actions for recovery of damages arising from injury to a person or property brought against a governmental entity under Title 2, chapter 9, parts 1 through 3, as amended." (Emphasis added.)

This statute clearly permits an award of prejudgment interest in almost all other cases, but it requires the discretion of the jury or the judge if tried to the court.

- 14 -

In contrast, § 27-1-211, MCA, is not a discretionary statute. Rather, it mandates interest as long as the legal situation fits within the broad guidelines of the statute. Determining whether a cause of action fits within the framework of the statute, particularly the question of whether the claim is determined or can be determined by calculation, is not always an easy one. However, the overriding purpose of the statute can be best preserved if it is remembered that its purpose is to fully compensate the injured party for the loss of use of his money during the period in which a valid claim was not paid. We believe, as did the court in Mitchell v. Flandro (Idaho 1972), 506 P.2d 455, that the objective of fully compensating the injured party, and that is the primary objective of the prejudgment interest statute, should predominate over other equitable considerations. If the legislature has chosen to provide a right to prejudgment interest (§ 27-1-211), the primary objective of the courts, where possible, should be to award prejudgment interest.

The statutory policy favoring an award of prejudgment interest to a plaintiff whose claim falls within the broad framework of § 27-1-211 does not result in an injustice to a defendant who has valid reason for not paying the entire claim, and who must resort to the courts to present his reason for not paying the entire claim. If the trial court reduces the plaintiff's claim because of a valid offset or counterclaim that can be determined by calculation, prejudgment interest would be permitted under § 27-1-211. On the other hand, if the setoff or counterclaim cannot be determined by calculation, it still may be such that a defendant may be awarded interest under § 27-1-212, in the discretion of the judge or jury. An award of interest under

- 15 -

either § 27-1-211 or 27-1-212 would further reduce the amount the plaintiff would be ultimately awarded and would more nearly approximate a fair resolution of the controversy in recognition of a defendant's right to assert an offset or counterclaim. It may lead to a speedier resolution of a controversy if a plaintiff knows that a valid offset or counterclaim may also bear prejudgment interest.

ATTORNEY FEES

The request for attorney fees in the lien foreclosure is based on statute, § 71-03-124, MCA. In Matzinger v. Remco, Inc. (1976), 171 Mont. 383, 558 P.2d 650, this Court held that the statute mandates an award of attorney fees to a claimant whose lien is successfully established. The lessor-lessees do not argue otherwise. As we have previously indicated, the trial court's ruling awarding attorney fees came too late to constitute part of a judgment favoring attorney fees, and therefore the plaintiff has filed his cross-appeal. The statute is clear, and it applies here. Plaintiff is entitled to an award of attorney fees.

DISPOSITION

In summary, we affirm the judgment foreclosing a mechanic's lien in the amount of $33,579.12, less the offset of $2,740.00 for defective performance. We reverse the order denying prejudgment interest and attorney fees. We remand to the District Court for a hearing on the interest to be awarded and the attorney fees to be awarded. Plaintiff is entitled to prejudgment interest on the $33,579.12 net amount found to be due. However, the trial court must also determine, in his discretion, whether the lessor-lessees are entitled to prejudgment interest on the $2,740.00 offset for defective performance.

The trial court also found that the lessor is not personally liable beyond the $25,000.00 agreed to, and although this issue is not on appeal as such, we affirm this holding so that the parties are sure of their rights during the future proceedings in the trial court.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices