# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3217

_____

| | |
|---|---|
| American Simmental Association, a Montana Non-Profit Association, | * <br> * <br> * |
| Plaintiff-Appellee, | * <br> * |
| v. | * <br> * |
| Coregis Insurance Company, an Indiana Corporation, | * <br> * <br> * |
| Defendant Third Party Plaintiff-Appellee, | * <br> * <br> * |
| St. Paul Fire and Marine Insurance Company, a Minnesota Corporation, | * <br> * <br> * |
| Defendant Third Party Defendant-Appellant. | * <br> * |

_____

No. 00-3218

_____

Appeals from the United States District Court for the District of Nebraska.

| | |
|---|---|
| American Simmental Association, a Montana Non-Profit Association, | * <br> * <br> * |
| Plaintiff-Appellant, | * <br> * <br> * |
| v. | * <br> * |

Coregis Insurance Company,          *
an Indiana Corporation,             *
                                    *
          Defendant Third Party     *
          Plaintiff,                *
                                    *
St. Paul Fire and Marine Insurance  *
Company, a Minnesota Corporation,   *
                                    *
          Defendant Third Party     *
          Defendant-Appellee.       *


          _____

          No. 00-3312
          _____

American Simmental Association,     *
a Montana Non-Profit Association,   *
                                    *
          Plaintiff,                *
                                    *
     v.                             *
                                    *
Coregis Insurance Company,          *
an Indiana Corporation,             *
                                    *
          Defendant Third Party     *
          Plaintiff-Appellant,      *
                                    *
St. Paul Fire and Marine Insurance  *
Company, a Minnesota Corporation,   *
                                    *
          Defendant Third Party     *
          Defendant-Appellee.       *

_____

Submitted:  October 15, 2001

Filed:   March 8, 2002
_____

Before MURPHY, BEAM and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

This is an insurance coverage dispute.  St. Paul Fire and Marine Insurance Company (St. Paul) appeals the district court's determination that St. Paul had a duty to defend its insured, American Simmental Association (ASA), in a suit brought against ASA by the Blue Dane Simmental Corporation (Blue Dane).  St. Paul also appeals the district court's determination that it must reimburse Coregis Insurance Company (Coregis), ASA's errors and omissions (E&O) carrier, for 60% of the reasonable defense costs incurred by ASA but paid by Coregis in the Blue Dane litigation.

In its cross-appeal, Coregis argues St. Paul should pay all of ASA's defense costs. Coregis also argues the district court unreasonably reduced ASA's recoverable defense costs, and erred in denying Coregis's request for attorneys' fees against St. Paul.  ASA joins Coregis in arguing the district court should have awarded prejudgment interest.  We reverse the district court's order denying prejudgment interest, and affirm in all other respects.

**I**

We briefly summarize the background of this insurance coverage dispute here, and refer the reader to the first of three published district court decisions for a more

detailed account of this extended litigation. See Am. Simmental Ass'n v. Coregis Ins. Co., 75 F. Supp. 2d 1023, 1024-28 (D. Neb. 1999) (ASA I).

Simmental is a breed of cattle. ASA is a not-for-profit association that registers and promotes Simmental cattle. In April 1994, a group of Simmental breeders (Blue Dane) sued ASA alleging it improperly designated certain bulls as "fullblood" Simmentals, improperly marketed the bulls, and falsely advertised the bulls in the Register, ASA's official publication. Blue Dane alleged ASA's activities decreased the value of their true "fullblood" Simmentals. ASA tendered defense of the Blue Dane suit to St. Paul, its commercial general liability (CGL) carrier. In May 1994, St. Paul refused to defend.

Blue Dane's original complaint stated violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the Sherman Act, 15 U.S.C. §§ 1 & 4(a). As the suit progressed, amended complaints added a claim under the Lanham Act, 15 U.S.C. § 1125, and state law negligence claims. The second amended complaint alleged several claims pertinent to the insurance coverage dispute: ASA engaged in advertisement, promotion, and representation of the disputed bulls as "fullbloods"; ASA's statements were false because the bulls had Angus blood; ASA falsely advertised to Simmental breeders who were or could be deceived; and ASA's misrepresentations were likely to affect the purchasing decisions of those Simmental breeders and impaired Blue Dane's ability to compete, causing lost customers and sales.

ASA tendered the second amended complaint to St. Paul in April 1996. St. Paul again refused to defend in August 1996. In June 1997, ASA tendered a third amended complaint containing the same causes of action as the second amended complaint. After St. Paul's third refusal in October 1997, ASA turned to Coregis, its E&O carrier. Pursuant to its policy, Coregis agreed to indemnify ASA for defense

costs arising from the Blue Dane suit, but indicated Coregis had no obligation to actually defend ASA in the suit.

In January 1998, the Blue Dane litigation was tried. ASA successfully defended itself, obtaining judgment as a matter of law. Blue Dane appealed and we affirmed. Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035 (8th Cir. 1999). ASA incurred roughly $1.2 million in fees and costs defending itself.

In October 1998, ASA commenced the present suit against Coregis to recover the fees and costs which Coregis had not yet paid. Coregis third-partied St. Paul, seeking a declaration that St. Paul had the duty to defend ASA in the Blue Dane litigation. Coregis sought contribution, indemnity, or equitable subrogation from St. Paul for the full amount Coregis had paid ASA. ASA also amended its complaint to add a direct claim against St. Paul.

The parties brought cross-motions for summary judgment on the duty to defend issue. Applying Montana law,[1] the district court granted the motions of Coregis and ASA, concluding St. Paul had a duty to defend because the Blue Dane allegations fell within St. Paul's coverage for "advertising injury" under the "unauthorized taking" and "infringement" clauses of the policy. See ASA I, 75 F. Supp. 2d at 1031.

Two months later, St. Paul renewed its motion for summary judgment. The motion raised, for the first time, a defense based on the policy's "false material" exclusion and cited our decision in Callas Enter., Inc. v. Travelers Indem. Co., 193 F.3d 952 (8th Cir. 1999). The district court denied the motion as untimely, and also noted the Callas opinion was "not substantively persuasive." Am. Simmental Ass'n v. Coregis Ins. Co., 190 F.R.D. 640, 641 (D. Neb. 2000) (ASA II).

---

[1]St. Paul issued the policy to ASA in Montana, and all parties agree Montana law governs the policy's interpretation.

Next, the district court addressed Coregis's claims against St. Paul for contribution, indemnity, and equitable subrogation. The district court ultimately determined both Coregis and St. Paul were obligated to pay a share of ASA's defense costs. The court ordered St. Paul to reimburse Coregis for 60% of the reasonable costs incurred by ASA. Am. Simmental Ass'n v. Coregis Ins. Co., 107 F. Supp. 2d 1064, 1079 (D. Neb. 2000) (ASA III). The district court determined the amount of defense costs incurred by ASA in the Blue Dane litigation was unreasonable and reduced the amount by 25% (from $1,199,178 to $809,830). In addition, the district court denied both ASA and Coregis prejudgment interest on their respective awards against St. Paul. Finally, the district court granted ASA's request for attorneys' fees incurred in the coverage suit against St. Paul, but denied Coregis's similar request for fees. Id. at 1085-87.

## II

We review all issues related to the district court's interpretation of insurance policies de novo. United Fire & Cas. Co. v. Fidelity Title Ins. Co., 258 F.3d 714, 718 (8th Cir. 2001).

### A.    St. Paul's Duty to Defend

The CGL policy issued by St. Paul provided coverage for "advertising injury." Advertising injury was defined in relevant part as "injury caused by any of the following offenses that result from the advertising of your products or work . . . unauthorized taking of advertising ideas or style of doing business [or] infringement of copyright, title or slogan." The policy did not further define "unauthorized taking of advertising ideas," "infringement," or "title," the terms principally at issue in this appeal. Therefore, those terms must be understood in their plain and ordinary meaning under Montana law, and cannot be given a technical meaning. Wendell v. State Farm Mut. Auto Ins. Co., 974 P.2d 623, 628 (Mont. 1999).

-6-

St. Paul argues the "unauthorized taking of advertising ideas" and "infringement" clauses do not apply to the allegations contained in the Blue Dane complaints. We disagree. The plain and ordinary meaning of "advertising idea" generally encompasses "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co., 99 F.3d 795, 801 (6th Cir. 1996). Blue Dane used the word "fullblood" in a manner that falls within the ordinary meaning of an "advertising idea." Blue Dane used the term "fullblood" to call attention to its Simmental cattle, and all parties agree that "fullblood" was a desirable quality in Simmental cattle.

In addition, the word "fullblood" would be commonly understood to be a "title." Blue Dane accused ASA of wrongfully using the "fullblood" title to advertise bulls, thereby causing Blue Dane injury. Thus, under a plain and ordinary meaning analysis, Blue Dane alleged an "unauthorized taking" of Blue Dane's "advertising idea," which "infringed" upon Blue Dane's use of the term "fullblood" and caused injury.

St. Paul further contends Blue Dane's complaints against ASA did not trigger a duty to defend because the advertising offenses did not "result from the advertising of [ASA's] products or work." St. Paul argues the advertised bulls were not ASA's products or work, but the products or work of Tom Risinger, the bulls' owner. We disagree. The Blue Dane complaints alleged Tom Risinger was "at all relevant times" an officer and director of ASA. Blue Dane did not distinguish between actions taken by Risinger in his official capacity, and those taken in his personal capacity. Because the St. Paul policy provided coverage for ASA's executive officers and directors, St. Paul had an obligation to defend the allegations against Risinger.

In addition, the policy defined "your products" as "goods or products that . . . others using your name . . . have sold." The Blue Dane complaints alleged Risinger

sold goods or products using ASA's name (i.e., the ASA designation of "fullblood"). Thus, St. Paul should have defended even if a valid distinction could be made between Risinger's products and ASA's products.

St. Paul argues some courts have construed the dispositive terms in this policy more narrowly than did the district court. But Montana follows the rule that "a split of authority from courts attempting to construe a phrase demonstrates that the phrase has more than one reasonable interpretation." Pablo v. Moore, 995 P.2d 460, 462 (Mont. 2000). Montana picks the interpretation that supports the insured. Id. at 463.

Here, Montana law forced the district court's hand. For purposes of triggering a duty to defend, the allegations of the complaint against the insured must be broadly construed from the insured's perspective. See Grindheim v. Safeco Ins. Co. of Am., 908 F. Supp. 794, 801 (D. Mont. 1995). Under that test, and in conjunction with our obligation to give the disputed policy terms a plain and ordinary meaning rather than a technical one, the Blue Dane complaints were broad enough to state an advertising injury and therefore trigger St. Paul's duty to defend.

Finally, St. Paul argues its duty to defend was not triggered until ASA had tendered Blue Dane's second amended complaint. For the reasons stated by the district court, see ASA III, 107 F. Supp. 2d at 1073, we agree St. Paul's duty to defend arose at the time ASA tendered the original Blue Dane complaint

## B. St. Paul's Renewed Motion for Summary Judgment

We review the district court's denial of St. Paul's untimely renewed motion for summary judgment for an abuse of discretion. African Am. Voting Rights Legal Defense Fund, Inc. v. Villa, 54 F.3d 1345, 1350 (8th Cir. 1995); LCA Corp. v. Shell Oil Co., 916 F.2d 434, 440 (8th Cir. 1990).

-8-

St. Paul's renewed motion was based on our decision in Callas, which also addressed a coverage dispute involving advertising injury. In Callas, we held all claims alleged in the underlying action arose out of breach of contract, and therefore fell within an exclusion in the policy for injuries "arising out of breach of contract." 193 F.3d at 956. We added that the insurer did not have a duty to defend its insured from a trademark infringement claim under the Lanham Act because such a claim did not constitute an advertising offense under the "misappropriation of advertising ideas or style of doing business" provision of that policy's advertising coverage. Id. at 956-57. We also concluded a defamation claim alleged in the underlying action would have been excluded under the policy's "knowledge of falsity" exclusion. Id. at 957.

St. Paul argued our interpretation of the "misappropriation of advertising ideas or style of doing business" clause in Callas bound the district court because Blue Dane had also stated a Lanham Act claim. But Blue Dane did not state a Lanham Act claim until its second amended complaint; the district court determined, and we agree, that Blue Dane's *original* complaint triggered St. Paul's duty to defend. We find no abuse of discretion in the district court's denial of St. Paul's renewed motion on this issue.

St. Paul further argued Callas's discussion of the "knowledge of falsity" exclusion required summary judgment in its favor, because the St. Paul policy also contained a "knowledge of falsity" exclusion and Blue Dane had alleged ASA made false statements knowingly. But St. Paul had never relied upon the "knowledge of falsity" exclusion in the six years it had denied a duty to defend ASA. St. Paul raised this exclusion for the first time in its renewed motion for summary judgment, brought on the eve of trial after the deadline for filing summary judgment motions had passed, and after the pretrial order had been entered. Under these circumstances, the district court acted well within its discretion in declining to consider the issue pursuant to Fed. R. Civ. P. 8(c). See ASA III, 107 F. Supp. 2d at 1080-81 (explaining thoroughly the reasons the district court refused to consider the "knowledge of falsity"

exclusion); see also Anderson v. Genuine Parts Co., Inc., 128 F.3d 1267, 1271 (8th Cir. 1997) (finding no abuse of discretion where a district court refused to allow a party to advance new theories following the entry of a pretrial order).

## C.    60/40 Allocation between St. Paul and Coregis

St. Paul contends the district court erred when it determined Coregis had a right of contribution or indemnity against St. Paul for the defense costs Coregis paid to ASA. St. Paul argues equitable contribution only applies when insurers cover the same risk.  Since St. Paul's obligation to pay ASA's defense costs arose from its duty to defend under a CGL policy, and Coregis's obligation arose from a duty to indemnify under an E&O policy, St. Paul claims Coregis had no right of contribution or indemnity for ASA's defense costs.[2]

In response, Coregis argues the district court should have fully reimbursed it under a theory of equitable subrogation.  Coregis contends it stepped into ASA's shoes by paying the defense costs, and was therefore subrogated to all of ASA's rights against St. Paul.  Since the district court held St. Paul was required to fully reimburse ASA, Coregis was entitled to be fully reimbursed as well.  In addition, Coregis contends St. Paul should be considered the primary insurer and Coregis the excess insurer pursuant to the respective policies' "other insurance" clauses.  Coregis argues its policy was not triggered because the St. Paul policy had not been exhausted.

Rather than focusing upon the respective insurers' duties, or whether one insurer was primary and the other excess, the district court focused upon the payments each insurer was required to make, i.e., a common insured's defense costs.

---

[2]We reject out of hand St. Paul's additional claim that Coregis has no right of contribution or indemnity because it acted as a volunteer when it paid ASA's defense costs.

-10-

The district court noted Montana law requires insurers to share a common insured's defense costs *pro rata* by dividing the total maximum coverage available under all policies by the maximum coverage provided by each insurer. See Guar. Nat'l Ins. Co. v. Am. Motorists Ins. Co., 758 F. Supp. 1394, 1397-98 (D. Mont. 1991), aff'd, 981 F.2d 1108 (9th Cir. 1992); Am. States Ins. Co. v. Angstman Motors, Inc., 343 F. Supp. 576, 586 (D. Mont. 1972); Liberty Mut. Ins. Co. v. United States Fid. & Guar. Co., 232 F. Supp. 76, 84-85 (D. Mont. 1964). Because St. Paul provided a maximum of $3 million in coverage and Coregis a maximum of $2 million for a total maximum coverage of $5 million, the district court allocated 60% (3 million/5 million) of ASA's defense costs to St. Paul, and 40% (2 million/5 million) of ASA's defense costs to Coregis.

We fully agree with the district court's disposition of this issue, and therefore affirm under 8th Cir. R. 47B for the reasons stated in the district court's thorough and well-reasoned opinion. See ASA III, 107 F. Supp. 2d at 1077-79.

## D.    Reduction in the Recoverable Defense Costs

Coregis contends the district court unreasonably reduced ASA's recoverable defense costs.[3] We review the district court's determination of the reasonableness of ASA's defense costs for an abuse of discretion. Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 638 (8th Cir. 1998). The district court conducted a careful review of the billings incurred in the underlying Blue Dane litigation and, having presided over the trial of that case, was intimately familiar with its complexity. The court cited several specific examples of billings which it deemed excessive. ASA III, 107 F. Supp. 2d at 1085. After reviewing the record, we cannot

------

[3]Coregis makes this argument because it had separately agreed to pay ASA defense costs in an amount greater than the amount the district court found to be reasonable.

say the district court abused its discretion in reducing the amount of ASA's recoverable defense costs.

## E.   Denial of Prejudgment Interest

The district court disallowed prejudgment interest on the awards in favor of ASA and Coregis.   The court held St. Paul's successful claim to reduce a portion of ASA's defense costs rendered the amount of damages uncertain, thereby making an award of prejudgment interest inappropriate.  We review this question of Montana law de novo.  Transit Cas. Co. v. Selective Ins. Co., 137 F.3d 540, 546 (8th Cir. 1998).

Montana's prejudgment interest statute provides that "[e]very person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day."  Mont. Code Ann. § 27-1-211.  Thus, the statute requires prejudgment interest if: (1) an underlying monetary obligation exists, (2) the amount of recovery is certain or able to be made certain through calculation, and (3) the right to recover the obligation vests on a particular day. Tipp v. Skjelset, 967 P.2d 787, 789-90 (Mont. 1998).

The Montana Supreme Court has recognized the Montana Legislature's preference for awarding prejudgment interest under Mont. Code Ann. § 27-1-211: "[t]he prejudgment interest statute . . . sets forth a broad area in which the legislature has determined prejudgment interest should be allowed as a matter of right." Price Bldg. Serv., Inc. v. Holms, 693 P.2d 553, 559 (Mont. 1985). Thus, an award of prejudgment interest is "*the rule* rather than the exception." Id. (emphasis added).

In Price, the court awarded prejudgment interest despite the defendants' successful claim to reduce the plaintiff's claimed damages.  The case involved a

contractor who submitted a bid for a commercial remodeling project, but due to changes in the project as construction progressed, ultimately submitted a bill significantly higher than the initial bid. The contractor ultimately recovered less than the total bill due to the property owners' counterclaims for construction delays and defective performance damages. Id. at 557-59. The property owners therefore argued the contractor was not entitled to prejudgment interest because the amount owed was not certain or capable of being made certain. Id. at 558-59. The Montana Supreme Court rejected the defendants' arguments.

> [T]he dispute over part of the claim here did not convert the contractor's claim into one on which prejudgment interest would not run. A dispute on the amount owed on part or all of a claim in the form of a denial of part or all of the amount owed, or in the form of a counterclaim for construction delay and defective performance, does not transform a plaintiff's claim into one that does not bear prejudgment interest. *It is the nature of the complaint rather than the character of the defense that determines the right to prejudgment interest*.

Id. at 569 (emphasis added).

Likewise, St. Paul's claim that some of ASA's defense costs were unreasonable serves only to reduce the principal amount on which the prejudgment interest accrues. It does not nullify the very right to collect prejudgment interest. The defense costs sought by ASA were sufficiently certain and calculable, in fact, even more certain than the contractor's bill in Price because ASA's attorney bills contained no ambiguity and no room for interpretation. The amount stated was the amount due. Moreover, it is undisputed that ASA paid their attorneys in full. We see no material difference between St. Paul's claim that portions of the fees were unreasonable, and the Price defendants' claim that some of the construction costs were unreasonable. Price leaves no doubt that such claims by a defendant will not defeat a plaintiff's right to prejudgment interest.

-13-

Furthermore, Montana law supports prejudgment interest awards on defense costs. See, e.g., DeTienne Assocs. Ltd. v. Farmers Union Mut. Ins. Co., 879 P.2d 704, 708-10 (Mont. 1994) (upholding the award of prejudgment interest on claimant's attorneys fees and adhering to the "equitable principle that an insured must be totally reimbursed for all losses as well as the costs involved in recovering those losses"). Prejudgment interest runs on known defense costs regardless of whether the parties agree to the reasonableness of such costs. See id. at 710 (awarding prejudgment interest from the date the defense costs were made certain (June 29, 1993) even though the parties first agreed to the costs' reasonableness at a later date (July 7, 1993)). Therefore, we reverse the district court's denial of prejudgment interest.

## F. Coregis's Claim for Attorney Fees

Finally, we address the district court's denial of Coregis's request for attorney's fees. The district court's decision turns on its interpretation of a Nebraska statute, and thus is a question of law we review de novo. United States v. Street, 257 F.3d 869, 870 (8th Cir. 2001).

The statute in issue provides as follows:

> In all cases when the beneficiary or other person entitled thereto brings an *action upon any type of insurance policy* . . . against any company . . . doing business in this state, the court, upon rendering judgment against such company, . . . shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

Neb. Rev. Stat. Ann. § 44-359 (emphasis added).

The district court determined the Nebraska statute governed Coregis's request for fees, but did not allow Coregis to obtain fees because Coregis's suit against St.

-14-

Paul was not an "action upon" the policy, but was rather "one to determine allocation or priority of liability as between different insurers of a common insured." ASA III, 107 F. Supp. 2d at 1087. The district court was correct. See Dairyland Ins. Co. v. Kammerer, 327 N.W.2d 618, 621 (Neb. 1982) (holding that a suit which seeks adjustment of liability between insurers cannot be viewed as "an action upon" the policy under Neb. Rev. Stat. Ann. § 44-359).

### III

For the reasons stated, we affirm the district court in all respects save as to the denial of prejudgment interest. On that issue, we reverse and remand to the district court to calculate the appropriate amount of prejudgment interest.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.