FILED

September 15 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0158

DA 15-0158

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 272

FITTERER SALES MONTANA, INC.,

        Plaintiff and Appellee,

   v.

CLINT MULLIN, JR.; A & C SOARING EAGLE, INC.,

        Defendants and Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Seventh Judicial District, In and For the County of Richland, Cause No. DV 09-84 Honorable David Cybulski, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

           Ben T. Sather, Sather & Holm, PLLC; Billings, Montana

      For Appellee:

           Nicholas C. Grant, Ebeltoft Sickler Lawyers, PLLC; Dickinson, North Dakota

                      Submitted on Briefs:  August 5, 2015
                              Decided:  September 15, 2015

Filed:

                                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Clint Mullin Jr. (Clint) and A&C Soaring Eagle, Inc. (A&C) appeal the findings of fact, conclusions of law, and order of the Seventh Judicial District Court, Richland County, which found that Clint and A&C owed Fitterer Sales Montana, Inc. (Fitterer) $114,398.06, plus additional prejudgment interest, pursuant to a contract for the sale of fertilizer and chemicals. We affirm in part, reverse in part, and remand for entry of an amended judgment consistent with this Opinion.

¶2 The issues on appeal are as follows:

1. *Whether there was a valid, binding contract between A&C and Fitterer for the sale of fertilizer and chemicals.*

2. *Whether Fitterer is entitled to prejudgment interest.*

3. *Whether Clint is personally liable for money owed under A&C's contract with Fitterer.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Fitterer (formerly known as Valley Crop Care, Inc.) is a North Dakota corporation licensed to do business in Montana. A&C is a Montana corporation based in Lambert, Montana, and Clint is the president and sole shareholder. Starting in May 2007, A&C purchased chemicals and fertilizer on account from Fitterer. Fitterer employee Sara DiFonzo set up the account, Account No. 1577, under the name of Clint's son, Zach Mullin (Zach). Fitterer and A&C had no written agreement setting forth the terms of Account No. 1577.

¶4 A&C made chemical purchases from Fitterer through Zach in May and June of 2007. When purchasing chemicals, customers would normally come into Fitterer's office

2

in Sidney, place the order, and sign a delivery ticket. According to DiFonzo, Zach normally stated he was with the "Mullins" and signed the tickets "Zachary." In 2007, Fitterer had only one account under the name Mullin: Account No. 1577. DiFonzo was never informed by Clint or anyone else that Zach was not authorized to make purchases on A&C's account.

¶5 A&C also made multiple orders of fertilizer from Fitterer in 2007. When a customer placed a fertilizer order with Fitterer, the order was recorded on a legal pad. Fitterer's plant operator used the information to generate three copies of a delivery ticket. If the customer had any special instructions about the delivery, it was noted at the bottom of the delivery ticket. There were never any special instructions or restrictions placed on Account No. 1577. It was Fitterer's standard practice in 2007 to leave one copy of the delivery ticket at the plant for inventory purposes and send the other two copies with the driver who delivered the order. The driver retained one copy and left one copy with the delivered load.

¶6 Although Fitterer preferred to have the customer sign the delivery ticket upon delivery, its drivers rarely saw customers at the point of delivery. Multiple fertilizer and chemical distributors from the area testified at trial that fertilizer deliveries to working farms rarely result in a signed delivery ticket. Jerys Enget, Fitterer's general manager in 2007, testified that farmers normally do not sign for fertilizer deliveries because "Farmers are busy," and the delivery drivers "[c]an't find them."

¶7 Although it was uncommon in the industry, Clint signed two delivery tickets from Fitterer for fertilizer orders made by Zach on Account No. 1577, dated May 11, 2007,

3

and May 19, 2007. After realizing that Account No. 1577 was under the name "Zach Mullin," Clint contacted Fitterer in early June 2007 and asked the company to change the name on the account to "A&C Soaring Eagle, Inc." The name "A&C Soaring Eagle Inc." appears on a charging invoice dated June 5, 2007.

¶8 Clint claimed at trial that it was his policy that Fitterer was not allowed to leave fertilizer with A&C unless he was present and could sign for the delivery. However, Clint never informed DiFonzo, Enget, or any other Fitterer employee of this policy. Clint also admitted at trial that he never told Zach that Zach could not order fertilizer or chemicals from Fitterer.

¶9 Fitterer sent copies of invoices to its customers every few weeks, and customers also received monthly statements showing every purchase made on their account during the preceding month. A&C received monthly statements from Fitterer for May and June 2007, and A&C did not dispute any of the charges on those statements made to Account No. 1577.

¶10 Account No. 1577 became past due on June 11, 2007, for purchases made in May 2007, and the account became past due on July 11, 2007, for purchases made in June 2007. A&C paid Fitterer four payments of $7,500, totaling $30,000. The four payments were made on October 1, 2008; November 1, 2008; December 1, 2008; and January 8, 2009. At the time of trial, the principal balance due on Account No. 1577 was $63,149.73.

4

¶11 On September 30, 2009, Fitterer filed suit in the District Court alleging that A&C and Clint personally owed Fitterer $98,183.91 as of July 31, 2009 on Account No. 1577. Fitterer alleged that it was owed interest on the amount due at a rate of 18% per year.

¶12 On April 21, 2010, the District Court granted a motion by A&C to compel discovery and awarded A&C attorney fees in the amount of $1,035. Although the order required both the discovery requests to be completed and the attorney fees to be paid within 30 days, the record does not reflect whether Fitterer complied with the April 21, 2010 order.

¶13 On April 23, 2012—over two years later—the District Court issued a "Notice of Older Case" to the parties. The notice stated: "[S]aid cause will be dismissed for failure of the Plaintiff to prosecute the action, unless, within sixty (60) days from the date hereof, good cause is shown why said action should continue." Fitterer responded to the notice on June 19, 2012, stating that it had filed a motion for partial summary judgment that day and, alternatively, that "this matter is ready for trial and [Fitterer] requests a trial at the convenience of the Court." A&C moved to dismiss the action, arguing that Fitterer was not authorized to do business in Montana. On October 24, 2013, the District Court denied both Fitterer's motion for summary judgment and A&C's motion to dismiss.

¶14 The District Court held a bench trial on December 3-4, 2014. On January 7, 2015, the District Court issued its findings of fact, conclusions of law, and order for judgment, finding that A&C and Clint personally breached the contract with Fitterer by failing to pay for the fertilizer and chemicals A&C ordered, accepted, and used. The District Court

5

ordered A&C and Clint to pay Fitterer $114,398.06,[1] which included $63,149.73 in unpaid principal and $51,248.33 in interest calculated at a rate of ten percent per year from June 11, 2007 to November 30, 2014. The court also ordered A&C and Clint to pay $526.04 per month in prejudgment interest, retroactive to December 1, 2014, until judgment was entered. A&C and Clint appeal the order of the District Court.

## STANDARDS OF REVIEW

¶15 We review the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. *Conagra, Inc. v. Nierenberg*, 2000 MT 213, ¶ 22, 301 Mont. 55, 7 P.3d 369. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Nierenberg*, ¶ 22. In determining whether the trial court's findings are supported by substantial credible evidence, we must view the evidence in the light most favorable to the prevailing party. *Nierenberg*, ¶ 22.

¶16 We review a district court's conclusions of law for correctness. *Nierenberg*, ¶ 23. We review a district court's grant or denial of prejudgment interest to determine if the district court's interpretation of the law is correct. *Swank Enter., Inc. v. All Purpose Serv., Ltd.*, 2007 MT 57, ¶ 14, 336 Mont. 197, 154 P.3d 52.

---

[1] The District Court's January 7, 2015 order erroneously calculated the interest due to Fitterer on the $63,149.73 of unpaid principal. Fitterer moved to amend the judgment asking for a correction of the clerical error, and the motion was granted. The interest amounts in this Opinion are the corrected amounts from the February 27, 2015 order granting Fitterer's motion to amend the judgment.

6

**DISCUSSION**

¶17 *1. Whether there was a valid, binding contract between A&C and Fitterer for the sale of fertilizer and chemicals.*

¶18 A&C argues that it had no valid, binding contract with Fitterer. A&C notes that "[i]dentifiable parties capable of contracting, consent, a lawful object, and sufficient consideration comprise the essential elements of any contract," citing *Zier v. Lewis*, 2009 MT 266, ¶ 19, 352 Mont. 76, 218 P.3d 465. A&C argues that only Clint had the authority to bind A&C to any contract for the purchase of chemical or fertilizer, and therefore only Clint could provide the requisite consent to form a binding contract between A&C and Fitterer. A&C argues that, because Clint never signed for fertilizer deliveries on behalf of A&C or purchased chemicals on behalf of A&C, no valid contract exists.

¶19 Fitterer argues that this was a contract for the sale of goods and is therefore governed by Chapter 2 of Montana's Uniform Commercial Code (UCC), §§ 30-2-101 et seq., MCA. "'Goods' means all things . . . which are movable at the time of identification to the contract for sale." Section 30-2-105(1), MCA. Fitterer contends this includes fertilizer and chemicals used for agricultural purposes. We agree.

¶20 "[T]he U.C.C. rules governing sales agreements are far more permissive . . . than the general common law rules governing contract formation." *Nierenberg*, ¶ 28. "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Section 30-2-204(1), MCA. A&C ordered, accepted, and used the deliveries of fertilizer

7

and orders of chemicals from Fitterer. This was sufficient to show agreement, and create a valid, binding contract under Montana's UCC.

¶21 A&C argues that Zach was not an agent of A&C, and therefore he could not bind A&C to an agreement. A&C notes that Zach has never been employed by A&C, and A&C maintains that Zach did not have authority to make purchases on behalf of A&C.

¶22 "An agent is one who represents another, called the principal, in dealings with third persons." Section 28-10-101, MCA. "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal." Section 28-10-103(1), MCA. "Pursuant to this statutory definition of ostensible agency, it must be the principal, not the agent, who 'intentionally or by want of ordinary care causes a third person to believe another to be his agent.'" *Sunset Point P'ship v. Stuc-O-Flex Int'l, Inc.*, 1998 MT 42, ¶ 22, 287 Mont. 388, 954 P.2d 1156 (citing § 28-10-103(1), MCA). Agency can also be created "by a precedent authorization or a subsequent ratification." Section 28-10-201, MCA.

¶23 Whether intentionally or by want of ordinary care, Clint rendered Zach an ostensible agent of A&C. Clint had actual knowledge of the fertilizer orders made by Zach when Clint signed two delivery tickets for fertilizer from Fitterer on May 11, 2007, and May 19, 2007. Clint never informed DiFonzo or any other Fitterer employee that Fitterer was not allowed to leave fertilizer with A&C unless Clint was present and could sign for the delivery. Clint admitted at trial that he never told Zach that Zach could not order fertilizer or purchase chemicals from Fitterer. Furthermore, A&C ratified Zach's

8

actions when it accepted and used the chemical purchases and fertilizer deliveries from Fitterer. A&C also never disputed the charges on the statements from Fitterer for Account No. 1577 in May, June, or July of 2007.

¶24 A&C accepted and used the fertilizer and chemicals ordered by A&C's agent, Zach. A valid, binding contract for the sale of goods existed between A&C and Fitterer.

¶25 *2. Whether Fitterer is entitled to prejudgment interest.*

¶26 "A party is entitled to prejudgment interest when three criteria are met: (1) the existence of an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain by calculation; and (3) the right to recover the obligation vests on a particular day." *DiMarzio v. Crazy Mountain Constr., Inc.*, 2010 MT 231, ¶ 58, 358 Mont. 119, 243 P.3d 718 (citing § 27-1-211, MCA). Relying on *DiMarzio*, A&C argues that Fitterer is not entitled to prejudgment interest because there was no valid, binding contract between the parties, and the right to recover did not vest on a particular day.

¶27 In *DiMarzio*, the plaintiff (DiMarzio) hired Crazy Mountain Construction, Inc. (CMC) as a general contractor to remodel his home. F.L. Dye Company was hired to install an air conditioning and humidification system. *DiMarzio*, ¶ 2. After disputes arose among DiMarzio, CMC, and F.L. Dye regarding the quality of the work, DiMarzio terminated the project and sued CMC and F.L. Dye. F.L. Dye filed a counterclaim against DiMarzio for breach of contract. *DiMarzio*, ¶¶ 2-3. F.L. Dye prevailed in its suit against DiMarzio and sought prejudgment interest. *DiMarzio*, ¶¶ 8-9. We held that the District Court did not err by refusing to award prejudgment interest because "this was not

9

an action for the definite unpaid balance of a contract. Until the jury returned its verdict, neither party knew if a contract even existed, let alone a certain sum of damages." *DiMarzio*, ¶ 60.

¶28 A&C's reliance on *DiMarzio* is unavailing. The dispute at issue here satisfies the three requirements we articulated in *DiMarzio*: (1) there was a clear underlying monetary obligation—A&C's balance due on Account No. 1577; (2) the amount due on Account No. 1577 was "capable of being made certain" by calculating the amounts due on each order, subtracting the payments A&C did make, and applying the applicable interest; and (3) the right to recovery vested on the dates the accounts became due per the terms of the statements. *See Serrania v. LPH, Inc.*, 2015 MT 113, ¶ 27, 379 Mont. 17, 347 P.3d 1237 ("Section 31-1-106(1)(b), MCA, however, authorizes interest 'on all money at a rate of 10% a year after it becomes due on . . . an account stated[.]'").

¶29 Notwithstanding the *DiMarzio* criteria, A&C further argues that Fitterer should not benefit from its own delays in the legal proceedings by recovering prejudgment interest on a claim that Fitterer did not pursue for over two years. A&C notes that this case languished to the point that the District Court issued a "Notice of Older Case" in order to spur action from the parties. Fitterer responds that A&C's argument does not satisfy either of the exceptions to the payment of prejudgment interest set forth in § 27-1-211, MCA, which provides that a party has a right to prejudgment interest "except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt." Section 27-1-211, MCA. Fitterer notes that A&C was never prevented from paying its debt either by law or by any of Fitterer's actions. We agree.

10

¶30    In *Price Bldg. Serv. v. Holms*, 214 Mont. 456, 693 P.2d 553 (1985), almost nine years passed between the completion of the construction project underlying the dispute and the date of trial.    Nevertheless, we reversed the District Court's denial of prejudgment interest, noting that time delay was not one of the exceptions to an award of prejudgment interest listed in § 27-1-211, MCA.    *Price*, 214 Mont. at 464-65, 693 P.2d at 557-58.    We also rejected the argument "that as an equitable matter the contractor's lack of diligence in taking the case to trial must invalidate the operation of the prejudgment interest statute."    *Price,* 214 Mont. at 465-66, 693 P.2d at 558.    We noted that "[t]he record reveals that the [plaintiff] did not diligently pursue his claim but also reveals that the [defendants] did not ask for a speedy resolution of this matter.    [The defendants] were content to let the case remain inactive."    *Price*, 214 Mont. at 464, 693 P.2d at 557.    Similarly, in this case the record reveals that A&C did not seek a speedy resolution of the matter.

¶31    Fitterer was properly awarded prejudgment interest on the unpaid principal amount due on A&C's account under § 27-1-211, MCA.

¶32    *3. Whether Clint is personally liable for money owed under A&C's contract with Fitterer.*

¶33    A&C argues that Fitterer has failed to establish any personal liability against Clint, despite the District Court's finding that "[i]t appears that sometimes [Clint] and his entities are interchangeable."    Fitterer concedes on appeal that Clint should be dismissed as a defendant in this case, and only A&C should be held liable under the contract.    We

11

therefore remand this case to the District Court for the dismissal of Clint personally as a defendant.

## CONCLUSION

¶34    The District Court correctly determined that a valid, binding contract existed between A&C and Fitterer for the sale of goods.  Fitterer is entitled to prejudgment interest on the amount due under the contract.  This case is remanded to the District Court for dismissal of Clint Mullin as a defendant.

¶35    Affirmed in part, reversed in part, and remanded for entry of an amended judgment consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT