No. 92-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PATTY DICKEN,

Plaintiff and Appellant,

-vs-

WILLIAM A. SHAW, ANNE M. SHAW,
    AND
FRANK O. WILLIAMS,

Defendants and Respondents.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Edward McLean, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

             Roderick K. Ermatinger, Attorneys, Inc., P.C.,
             Missoula, Montana

        For Respondent:

             Kathleen O'Rourke-Mullins, Sullivan & Tabaracci,
             Missoula, Montana
             Gary Kalkstein, Quane, Smith, Howard & Hull,
             Missoula, Montana
             Karl J. Englund, Attorney at Law, Missoula, Montana

FILED

NOV 5 - 1992

Filed: *Cd Smith*
CLERK OF SUPREME COURT.
STATE OF MONTANA

Submitted on Briefs: September 24, 1992

Decided: November 4, 1992

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Patty Dicken brought this action against the defendants, from whom she had leased office space, claiming breach of contract, forcible entry, wrongful eviction, and conversion of personal property. The District Court for the Fourth Judicial District, Missoula County, denied Dicken's request for a preliminary injunction preventing the defendants from leasing the office space to others during this lawsuit. Dicken appeals. We affirm.

The issues are:

1. Did the District Court err when it held Dicken would not suffer irreparable injury and refused to enjoin defendants from leasing the subject premises to others?

2. Did the court err by limiting Dicken's remedies to monetary damages?

3. Did the court exceed the scope of the preliminary injunction hearing?

On January 24, 1992, Patty Dicken entered into a two-year lease agreement to rent commercial office space in the Professional Village Complex in Missoula, Montana. Defendants William A. Shaw and Anne M. Shaw owned the Complex, which was managed by Missoula Realty. Defendant Frank O. Williams owned Missoula Realty.

Dicken planned to open a business to be called "A Pregnancy Solution," which she initially described to Williams as a pregnancy counseling service. The office space Dicken rented was adjacent to

2

office space rented by Blue Mountain Clinic, a tenant of the Complex which provided abortion services. A few days after Dicken entered her lease with defendants, an article appeared in the local newspaper describing Dicken's business as an "anti-abortion center." Defendants became concerned. They retained an attorney who asked Dicken for written assurance that she would violate no laws in the operation of her business, that she and her staff would not harass employees, clients, or customers of other tenants, and that she and her staff would not trespass upon the leased premises of other tenants. Dicken refused to give such written assurances.

On February 14, 1992, the defendants had the lock changed to the office space Dicken had rented so that she could not enter it. Dicken then filed this lawsuit. She asked for specific performance of her rental contract with the defendants, money damages, costs and attorney fees, and an injunction preventing the defendants from leasing the premises to others during the term of her lease.

Dicken also requested a preliminary injunction to prevent the defendants from renting the space to anyone else while this action is pending. After a hearing on that request, the District Court found that Dicken had not met her burden of proving that she would suffer great or irreparable injury if she were not granted possession of the premises or if the defendants were not enjoined from leasing the premises. The court stated that it appeared monetary damages would fully compensate Dicken if the facts and

3

circumstances of the case are ultimately determined in her favor. In addition, the court ordered that Dicken's personal property be removed from the premises and returned to her.

I

Did the court err when it held Dicken would not suffer irreparable injury and refused to enjoin defendants from leasing the subject premises to others?

The standards for whether a preliminary injunction should be granted are set forth at § 27-19-201, MCA. Dicken argues that she is entitled to a preliminary injunction under subsections (2) and (3) of § 27-19-201, MCA:

> An injunction order may be granted in the following cases:
>
> . . .
> (2) when it shall appear that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
> (3) when it shall appear during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual[.]

This Court's standard of review of an order granting or denying a preliminary injunction is whether the trial court abused its discretion. Porter v. K & S Partnership (1981), 192 Mont. 175, 181, 627 P.2d 836, 839.

Dicken argues that she will be irreparably harmed if the defendants are allowed to lease the office space to another tenant

4

because the location next to Blue Mountain Clinic is unique and ideal for her services. However, her testimony at the hearing contradicted this argument. She testified on both direct and cross examination that the features of this office space which were important to her were the amount of rent charged and the size of the space:

> Q. Once you leased and possessed unit 14 would you tell us whether or not you believed there was any other location in Missoula which would serve your center's purposes better than unit 14?
>
> A. I believe it was the only location that would serve its purpose.
>
> Q. And why is that?
>
> A. Strictly because of the deal I got. There's no other office space available in town that you could get that cheap.
>
> . . .
>
> Q. Now, if it's fine to look at downtown space, how is it now that unit number 14 is so unique that you don't really want --
>
> A. The price, the lease itself. 350 for utilities paid and the size of the office space.
>
> . . .
>
> Q. So it's your testimony then that the real uniqueness of this space is the monetary advantage?
>
> A. Uh-huh.
>
> Q. And if you could find other space that was that cheap and had that square footage, then that would be fine, too?
>
> A. Yes, it would.

. . .

Q. I guess I'm a little bit confused. If you're not going to physically interfere with patients who are going to utilize the [Blue Mountain Clinic] facility, then why does location matter? If you're going to reach these people through advertising and through churches, then what difference does proximity to the clinic make?

A. It doesn't. Like I said, so far as to me being at Blue Mountain, yes, they do abortions and maybe the women will see us. The location itself, yes, is important. If I could have found -- If there was an office space open to Western Montana Clinic, you know, it doesn't --

Q. So the fact that it's [Blue Mountain Clinic] there, really isn't important because you're not planning to go out and intercept these people. You're planning --

A. No.

Q. Your plan was to advertise and reach them through other means; is that correct?

A. Yes.

Q. So location really isn't that important to you?

A. Not too important, no.

In her testimony, Dicken did not identify any attributes of the leased premises that singularly fit her proposed business other than her belief that the property was less expensive than other similar property. If the defendants are found to have breached the lease by changing the locks, it appears Dicken can be adequately compensated for that breach through monetary damages.

Money damages are not considered "irreparable harm" because money damages may be recovered in an action at law without resort to equity. New Club Carlin v. City of Billings (1989), 237 Mont.

6

194, 196-97, 772 P.2d 303, 305. Therefore, we conclude that Dicken has failed to prove that she will be greatly or irreparably injured if the defendants rent the office space to someone else during this litigation. Similarly, Dicken has not shown, as would be necessary to justify a preliminary injunction under § 27-19-201(3), MCA, that renting the office space to another tenant during this litigation will tend to render the potential judgment ineffectual, because she has not shown that she has been damaged other than monetarily.

We hold that the District Court did not abuse its discretion in ruling that Dicken would not suffer irreparable injury and in refusing to enjoin defendants from leasing the subject premises to others while this litigation proceeds.

II

Did the court err by limiting Dicken's remedies to monetary damages?

The District Court stated "it appears to the Court that monetary damages would fully compensate Plaintiff if the facts and circumstances of this case are ultimately determined to be in her favor." Dicken contends her remedies have been prematurely limited before trial.

The District Court's statement is clearly not a final ruling on the extent and type of Dicken's damages. It is only a statement of her failure to prove entitlement to injunctive relief and does

7

not preclude proof of other damages at trial. We hold that the court's statement was not error.

## III

Did the District Court exceed the scope of the preliminary injunction hearing?

Dicken argues that the court erred when it ordered removal of her personal property (a large file cabinet, books, videos, a fetal model kit, and posters) from the office space she had rented from the defendants. She states that this relief was not requested by the defendants and that the defendants did not prove that irreparable injury would result if her property were allowed to remain there. Also, she argues that the court should not have changed the status quo and that she was the last party in legitimate possession of the property.

A court should act to preserve the status quo only after the applicant has made a showing that he or she will be irreparably injured if an injunction is not granted while the matter is being litigated. Porter, 627 P.2d at 839. As discussed above under Issue I, Dicken has not made such a showing of irreparable injury.

Defendants point out that it is the duty of the court to minimize injury to all parties. Porter, 627 P.2d at 840. At the time of the hearing on her motion for a preliminary injunction, Dicken was locked out of the premises where her personal property remained. At the hearing, the District Court determined that

Dicken had shown no reason why the premises could not be leased to others. We hold that the District Court did not err in then acting to protect Dicken's personal property by ordering the defendants to arrange to have it returned to her.

Affirmed.

_____
                                    Chief Justice

We concur:

_____

_____

_____

_____
          Justices

9

November 5, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Roderick K. Ermatinger
Attorneys, Inc., P.C.
301 W. Spruce St.
Missoula, MT   59802

Kathleen O'Rourke-Mullins & Zane K. Sullivan
Sullivan & Tabaracci
430 Ryman
Missoula, MT   59802

Gary Kalkstein
Quane, Smith, Howard & Hull
619 S. W. Higgins
Missoula, MT  59801

Karl Englund
Attorney at Law
401 North Washington
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy