No. 97-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 150

AMERICAN MUSIC COMPANY

and ZOLLIE KELMAN,

Plaintiffs and Appellants,

v.

DENNIS L. HIGBEE, MAEETTA

HIGBEE, and HIGBEE, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Marge Johnson, Judge Presiding.

COUNSEL OF RECORD:

For Appellants:

Steven T. Potts, Thompson, Jacobsen & Potts, Great Falls, Montana

For Respondents:

Gregory J. Hatley, Davis, Hatley, Haffeman & Tighe, Great Falls,

Montana


Submitted on Briefs: April 16, 1998

Decided: June 16, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1 American Music Company and Zollie Kelman (collectively, AMC) brought this action seeking a declaratory judgment, preliminary and permanent injunctions, and specific performance of a gaming machine contract. The Eighth Judicial District Court, Cascade County, determined that injunctive relief was not proper in a breach of contract action when pecuniary compensation was contemplated and would afford adequate relief. On that basis, the court dissolved a temporary restraining order it had earlier issued. AMC appeals. We affirm.**

**¶2 AMC presents three issues for our review:**

**¶3 1. Did the District Court abuse its discretion by failing to grant a preliminary injunction prohibiting the Higbees from disconnecting and removing AMC's machines?**

**¶4 2. Did the court abuse its discretion by failing to grant a preliminary injunction restraining the Higbees from purchasing their own gaming machines?**

¶5 3. Did the court abuse its discretion by dissolving its preliminary injunction requiring the Higbees to deposit 40 percent of their machine receipts into a trust account pending the outcome of this litigation?

¶6 In 1990, the parties entered a written agreement concerning a casino the Higbees planned to build and operate in Great Falls, Montana. Zollie Kelman agreed to sell the Higbees a building site and to guarantee their bank loan. In return, the Higbees agreed to give Kelman's family gaming company, AMC, an exclusive five-year right to place and maintain amusement and gambling machines in the new casino. Under the agreement, AMC would receive 40 percent of the profits from the machines and the Higbees would receive 60 percent. In 1993, the parties agreed, again in writing, to extend AMC's exclusive agreement for an additional three years, until August 10, 1998.

¶7 During the winter of 1996-97, the Higbees remodeled the casino, which was originally known as Thirsty's but was later rechristened the Gold Dust Casino. As part of the remodeling, the Higbees wanted to offer their patrons the most up-to-date gaming machines on the market. AMC did not have available the type of machines the Higbees desired. Therefore, after some largely unfruitful discussions with Kelman, the Higbees purchased their own machines. In April 1997, they stopped paying AMC its 40 percent share of profits and began paying AMC 20 percent. Additionally, they refused in June 1997 to cooperate with AMC to renew the licenses of its machines located in the casino, and, later that month, Maeetta Higbee told Kelman to remove eight of AMC's machines from the premises.

¶8 When AMC filed this action in June 1997, the District Court issued a temporary restraining order prohibiting the Higbees from removing or interfering with the operation of any of AMC's gaming or amusement machines. After a show cause hearing to determine whether a preliminary injunction was warranted, the court orally dissolved the temporary restraining order and denied the application for a preliminary injunction. The court, however, allowed time for filing of additional arguments, pending receipt of which it ordered the Higbees to deposit 40 percent of their gaming machine profits into a trust account.

¶9 In response to additional motions filed, the court issued another temporary restraining order prohibiting the Higbees from removing or interfering with the operation of any of AMC's gaming or amusement machines on their business

premises. A week later, the court held another show cause hearing. As a result of the second hearing, the court dissolved its second temporary restraining order and its order requiring deposit of a percentage of the profits from the gaming machines into a trust account. AMC appeals.

## ISSUE 1

¶10 Did the District Court abuse its discretion by failing to grant a preliminary injunction prohibiting the Higbees from disconnecting and removing AMC's machines?

¶11 A ruling on a motion for preliminary injunction is subject to the discretion of the district court. Billings v. County Water Dist. (1997), 281 Mont. 219, 226, 935 P.2d 246, 250. This Court reviews such rulings for abuse of that discretion.

¶12 A preliminary injunction may be granted in the following circumstances:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual;
>
> (4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;
>
> (5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15.

Section 27-19-201, MCA. AMC argues that a preliminary injunction was proper in this

case under subsections (1), (2), and (3) above.

¶13 We disagree. As to subsection (1), it does not appear AMC is entitled to the final injunctive relief demanded. A party to a contract may choose to breach the contract and to pay damages for that breach. See § 27-1-311, MCA. Final injunctive relief may only be granted if pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, the restraint is necessary to prevent multiple judicial proceedings, or the obligation arises from a trust. Section 27-19-102, MCA. Here, AMC entered into agreements for the purpose of making money from gambling machines. It appears that monetary damages will provide the full relief to which AMC is entitled.

¶14 At the hearings on the preliminary injunctions, both parties admitted that the gambling machines are manufactured so that one can tell almost on a daily basis how much money is being earned and so that income from the machines can be accurately calculated "to the penny." The parties also acknowledged that the State of Montana monitors the gambling machines to make sure all income is appropriately and accurately accounted for. Additionally, historical data going back to 1990 shows how much AMC has received from the gaming machines on a quarterly and yearly basis. We conclude that it would not be difficult to ascertain the amount of compensation which would afford adequate relief.

¶15 Subsection (2) provides that a preliminary injunction may be issued when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant. As discussed above, this case centers around which party is entitled to income from the gaming machines at the Gold Dust Casino, and it appears that pecuniary compensation will afford adequate relief. Money damages are not considered irreparable harm, because money damages may be recovered in an action at law without resort to equity. Dicken v. Shaw (1992), 255 Mont. 231, 236, 841 P.2d 1126, 1129.

¶16 As to subsection (3) of the preliminary injunction statute, we reach a similar conclusion. The Higbees' act of ceasing to use AMC's machines will not render any judgment for AMC ineffectual, because it appears that monetary damages will be sufficient to compensate AMC for any damages.

¶17 We hold that the District Court did not abuse its discretion in failing to grant a preliminary injunction prohibiting the Higbees from disconnecting and removing AMC's gaming machines.

ISSUE 2

¶18 Did the court abuse its discretion by failing to grant a preliminary injunction restraining the Higbees from purchasing their own gaming machines?

¶19 The parties' contract provided:

> Higbee agrees not to either directly [or] indirectly purchase or cause to be purchased any coin-operated or non-coin-operated amusement or gambling games and device of the type or kind listed in this agreement, for use in Thirsty's, during the period of time covered by this agreement and they further agree not to enter into any agreement with or authorize any third-party to place or cause to be placed any of the items of the classes and kinds described in this agreement in Thirsty's during the term of this agreement.

AMC argues that money damages would not be an adequate remedy for breach of this clause and that an injunction is the proper remedy to enforce a negative restriction such as this one.

¶20 As part of this argument, AMC claims that inasmuch as the contract was part of a real property transaction, the rule applies that "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." Section 27-1-419, MCA. However, the matters on which injunction is here sought do not relate to any purported breach of the provisions regarding transfer of real property in the agreement between the parties.

¶21 The Higbees respond to this issue by citing the provision in the agreement that the machines supplied by AMC "shall be of the latest type." While AMC insists that its contractual duty to supply the latest type of machines applied only to the initial machines it supplied in 1990 and was not a continuing duty, the Higbees contend that AMC's failure to continue to supply the latest type of gambling machines is a breach of their agreement. The Higbees argue that this breach not only entitled them to suspend their performance but also precludes AMC from seeking equitable relief

from the court by means of a preliminary injunction. They point out that

> [a] party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract required of him so far as possible, and if he himself is in default or has given cause for nonperformance by defendant he has no standing in equity.

43A C.J.S. Injunctions, § 89, pp. 111-12.

¶22 In light of the Higbees' argument, we hold that the District Court did not abuse its discretion in failing to grant a preliminary injunction restraining the Higbees from purchasing their own gaming machines.

ISSUE 3

¶23 Did the court abuse its discretion by dissolving its preliminary injunction requiring the Higbees to deposit 40 percent of their machine receipts into a trust account pending the outcome of this litigation?

¶24 The Higbees claim they are financially unable to make payments to a trust account in the amounts required by their agreement with AMC. AMC argues that this financial situation justifies the preliminary injunction. But the Higbees contend that their financial situation is a result of AMC's failure to comply with the terms of their agreement and the resulting necessity that they purchase and pay operating costs of their own up-to-date gambling machines. They maintain that it would be inequitable to allow AMC to avoid its obligation to provide the latest gaming machines while at the same time forcing them to set aside AMC's purported share of the profits.

¶25 AMC cites Stark v. Borner (1987), 226 Mont. 356, 359, 735 P.2d 314, 316-17. In that case, this Court upheld a preliminary injunction where it appeared that "defendants may be unable to respond in damages if plaintiffs prevail . . . which would render any substantial damage award plaintiffs may recover ineffectual and unrecoverable, and further that . . . damages . . . would be quite difficult or impossible to accurately determine." In that case, inability to pay was not alleged to be a result of a breach of contract by the payee. Additionally, in Stark, inability to pay was not combined with damages which were difficult or impossible to accurately

determine. **In contrast, it does not appear that damages, if any, will be difficult to determine in the present case.**

**¶26 We hold that the District Court did not abuse its discretion in determining that AMC was not entitled to a preliminary injunction requiring a deposit of machine receipts into a trust account.**

**¶27 Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice William E. Hunt, Sr., concurring in part and dissenting in part.

**¶28 I concur with that part of the majority opinion which affirms the District Court's decision to deny the preliminary injunction prohibiting the Higbees from disconnecting and removing AMC's gaming machines and to deny the preliminary injunction restraining the Higbees from purchasing their own gaming machines.**

**¶29 I dissent from that part of the majority opinion which holds that the District Court did not abuse its discretion by dissolving its preliminary injunction requiring the Higbees to deposit 40 percent of their machine receipts into a trust account pending the outcome of this litigation.**

**¶30 I agree with the majority opinion that an injunction preventing the Higbees from removing AMC's gaming machines was not appropriate because monetary damages will afford full relief; it is not difficult to ascertain the amount of monetary damages necessary to afford AMC adequate relief; and Higbees' act of ceasing to use AMC's machines will not render any judgment for AMC ineffectual, because it appears that**

monetary damages will be sufficient to compensate AMC for any damages. This entire holding presumes that monetary damages will be available should AMC prevail.

**¶31 However, the danger in this case is that monetary damages will not be available. As the majority opinion points out, the Higbees themselves "claim they are financially unable to make payments to a trust account in the amounts required by their agreement with AMC." According to the terms of the statute, a preliminary injunction may be granted:**

> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual[.]

Section 27-19-201, MCA. In this case, it appears that due to the Higbees' potential inability to pay, a money judgment may be ineffectual and irreparably injure AMC. If a preliminary injunction is not entered requiring the Higbees to utilize AMC's gaming machines, then the Higbees should be required to place 40 percent of all gaming machine profits into a trust account pending the outcome of this litigation, in order to afford some protection to AMC.

**¶32 For this reason, I would reverse the District Court order dissolving its preliminary injunction requiring the Higbees to deposit 40 percent of their machine receipts into a trust account pending the outcome of this litigation.**

/S/ WILLIAM E. HUNT, SR.