No. 02-643

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 349

AMERICAN MUSIC COMPANY,

Plaintiff and Respondent,

and ZOLLIE KELMAN,

Plaintiff and Appellant,

v.

DENNIS L. HIGBEE, MAEETTA HIGBEE, and HIGBEE, INC.,

Defendants, Respondents, and Cross-Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDV 97-717
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Steven T. Potts, Thompson Potts & Donovan, Great Falls, Montana

For Respondents:

Gregory J. Hatley and James A. Donahue, Davis Hatley Haffeman & Tighe,
Great Falls, Montana

Submitted on Briefs: January 13, 2004

Decided: December 7, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Zollie Kelman (Kelman) appeals the District Court's entry of summary judgment against him, and contends he was entitled to summary judgment. Defendants and Respondents Dennis and Maeetta Higbee and Higbee, Inc. (Higbees) cross-appeal the District Court's award of prejudgment interest to American Music Company (AMC). We reverse the District Court's grant of summary judgment in favor of Higbees and remand for further proceedings. In addition, we reverse the District Court's award of prejudgment interest to AMC.

¶2 This matter originally came before this Court in *American Music Co. v. Higbee*, 1998 MT 150, 289 Mont. 278, 961 P.2d 109 (*AMC I*). In that case, AMC and Kelman were seeking a declaratory judgment, preliminary and permanent injunctions, and specific performance of a gaming machine agreement (Agreement) entered into with Higbees. The Eighth Judicial District Court determined injunctive relief was not proper in a breach of contract action when pecuniary compensation was contemplated and would afford adequate relief. On that basis, the court dissolved a temporary restraining order it had previously issued. AMC appealed from the District Court's decision. We affirmed on June 16, 1998.

¶3 Thereafter, the case proceeded toward a jury trial in district court. On January 9, 2002, the District Court, relying on the language of the Agreement, granted Higbees' motion for summary judgment against Kelman, thereby precluding any personal recovery by him against Higbees. The District Court denied Kelman's motion for summary judgment as to Higbees' breach of the Agreement. On April 12, 2002, the jury found Higbees breached

their Agreement with AMC and awarded AMC damages of $82,000. On August 21, 2002, the District Court awarded AMC prejudgment interest.

¶4 We address the following issues on appeal:

¶5 1. Did the District Court err in denying summary judgment to Kelman against Higbees, and in entering summary judgment in favor of Higbees against Kelman?

¶6 2. Did the District Court err when it awarded prejudgment interest to AMC?

**BACKGROUND**

¶7 We review only those facts which are necessary to address the relevant issues herein. For a more detailed factual and procedural background, see *AMC I*.

¶8 In August 1990, Dennis and Maeetta Higbee, Kelman, and Kelman's family's business, AMC, entered into a written Agreement concerning a casino Higbees planned to build and operate in Great Falls. Kelman agreed to personally guarantee Higbees' bank loan. In return, Higbees agreed to provide AMC an exclusive five-year right to place and maintain amusement and gambling machines in Higbees' casino. In addition, the Agreement provided that AMC was to receive 40 percent of the profits from the gaming machines and Higbees were to receive 60 percent. Kelman also sold Higbees a building site. Ultimately, a casino was built, and named "Thirsty's."

¶9    Both Kelman and AMC were parties to the Agreement with Higbees. Among other things, the Agreement provided a remedy *to Kelman* if Higbees purchased any machines for placement in Thirsty's from third parties other than AMC:

> Should Higbee default under the terms and conditions of this paragraph or the following paragraph of this agreement, Higbee agrees to pay to Kelman the sum of $8,335.00 for each and every then remaining month of the term of this agreement as well as for each and every month thereafter until such time that it has obtained the unconditional release of Kelman's guaranty from [the] First Interstate Bank loan referred to above, which monthly sum is agreed upon and fixed by the parties as stipulated liquidated damages, without proof of loss and without waiver of American Music of any other damage, rights or remedies and American Music's obligation to place, maintain, repair and replace the games and devices referred to in this agreement in Thirsty's.

(Hereinafter "the exclusive agreement provision")

¶10    In 1993, the parties agreed in writing to extend the Agreement until August 10, 1998. Also, Higbees, Inc. was added as a party. In consideration of the extension, Kelman agreed to and did transfer an additional parcel of land to Higbees.

¶11    On April 18, 1996, Kelman was released from all obligations under his guaranty. A disagreement later ensued regarding the types of machines Higbees wanted in their casino and in April 1997, Higbees stopped paying AMC 40 percent of the gaming profits and instead began paying 20 percent. In June 1997, Higbees told Kelman to remove AMC's machines from the premises. When Kelman refused, Higbees removed AMC's machines and bought their own in July 1997. The Agreement expired by its terms in August, 1998.

4

**STANDARD OF REVIEW**

¶12    This Court reviews a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Motta v. Philipsburg Sch. Bd. Trs.*, 2004 MT 256, ¶ 11, 323 Mont. 72, ¶ 11, 98 P.3d 673, ¶ 11 (citation omitted). The party moving for summary judgment has the initial burden of proving there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case, and if the moving party meets that burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment in favor of the moving party. Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law, and this Court reviews that determination to determine whether the district court erred. *Motta*, ¶ 11.

¶13    A district court's award of prejudgment interest is a question of law; therefore, this Court determines whether the district court correctly applied the law. *In re Marriage of DeBuff*, 2002 MT 159, ¶ 15, 310 Mont. 382, ¶ 15, 50 P.3d 1070, ¶ 15.

**DISCUSSION**

**ISSUE 1**

¶14    Did the District Court err in denying summary judgment to Kelman against Higbees, and in entering summary judgment in favor of Higbees against Kelman?

¶15    Kelman argues the plain language of the Agreement obligates Higbees to pay liquidated damages to him upon default for the remainder of the term of their Agreement,

5

regardless of whether he was released from his guaranty. He claims the existence of the release only discharges Higbees' obligation to make payment after the term of the contract, but not before. In support of this argument, Kelman relies on the natural signification and grammatical arrangement of the words used in the Agreement and the ordinary rule of construction that qualifying words and phrases refer only to the last antecedent.

¶16 Higbees argue against application of the "last antecedent rule" claiming it is merely an interpretation tool, not a steadfast rule, and does not apply when to do so would produce a result contrary to the intent of the contract. Higbees assert the entire Agreement, when read as a whole, clearly provides that Higbees' obligation to pay existed only until such time as Kelman was released from his guaranty, even if that occurred prior to the expiration of the contract term.

¶17 Language of contractual provisions is interpreted according to its plain, ordinary meaning. When the language of a contract is clear, unambiguous and, as a result, susceptible to only one interpretation, the duty of the court is to apply the language as written. *State v. Asbeck,* 2003 MT 337, ¶ 18, 318 Mont. 431, ¶ 18, 80 P.3d 1272, ¶ 18. An ambiguity exists where the wording of the contract, taken as a whole, is reasonably subject to two different interpretations. *Asbeck*, ¶ 18; *Ophus v. Fritz*, 2000 MT 251, ¶ 23, 301 Mont. 447, ¶ 23, 11 P.3d 1192, ¶ 23 (citation omitted). Hence, in interpreting a written contract, the intention of the parties is ascertained "first and foremost" from the writing alone. *Asbeck*, ¶ 18 (citation omitted).

6

¶18     This Court has followed the basic grammatical construction rule that, absent a contrary intention, qualifying words and phrases should be applied only to the words or phrases immediately preceding, or in other words, the last antecedent. *See State ex rel. Hinz v. Moody* (1924), 71 Mont. 473, 484, 230 P. 575, 579; *State ex rel. Peck v. Anderson* (1932), 92 Mont. 298, 302, 13 P.2d 231, 233; *Butte-Silver Bow Local Govt. v. State* (1989), 235 Mont. 398, 405, 768 P.2d 327, 331.  This is in accordance with courts in other jurisdictions, including the Ninth Circuit Court of Appeals and the United States Supreme Court. *Tondre v. Pontiac School Dist.* (Ill. App. 1975), 342 N.E.2d 290, 294; *New Castle County v. National Union Fire Ins. Co.* (3rd Cir. 1999), 174 F.3d 338, 348; *Bakery & Confectionary Union & Indus. Intl. Pension Fund v. Ralph's Grocery Co.* (4th Cir. 1997), 118 F.3d 1018, 1026; *Northwest Forest Resource Council v. Glickman* (9th Cir. 1996), 82 F.3d 825, 832; *Barnhart v. Thomas* (2003), 540 U.S. 20, 27, 124 S.Ct. 376, 380-81, 157 L.Ed.2d 333, 340-41.

¶19     We now turn to the exclusive agreement provision at issue.  The phrase in question states that Higbees, in the event of a default, shall pay Kelman "$8,335.00 for each and every then remaining month of the term of this agreement as well as for each and every month thereafter until such time that it has obtained the unconditional release of Kelman's guaranty. . . ."  First, we note the phrase obligates the monthly payment to be made for each remaining month of the agreement, *as well as* for each and every month thereafter until Kelman's release from the guaranty.  The placement of the phrase "as well as" clearly denotes the existence of two separate obligations--one for the remaining term of the Agreement, and one

7

for the post-Agreement term during which the guaranty remains in existence. Second, we conclude the phrase beginning with "until such time . . ." modifies only the clause immediately preceding it--"each and every month thereafter." Therefore, in the event of default, Higbees were to pay Kelman $8,335.00 per month until the term of the Agreement expired, whether or not Kelman was released from his guaranty. The fact Higbees had already released Kelman from his guaranty meant only that there would be no hold-over obligation to continue the monthly payment beyond the term of the Agreement. Despite Higbees' assertion, there is no contrary intention found in the exclusive agreement provision.

¶20 Our conclusion concerning the meaning of the phrase in question notwithstanding, however, Higbees argue Kelman did not suffer any damages as a result of Higbees' breach and that this precludes an award of liquidated damages. Higbees assert the liquidated damages Kelman seeks are unconscionable pursuant to our recent decision in *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, 318 Mont. 103, 79 P.3d 250. Specifically, they argue Kelman did not suffer any damages as a result of the breach, and therefore the liquidated damages do not approximate actual damages.

¶21 Kelman contends Higbees' unconscionability argument is raised for the first time on appeal, and thus should not be considered. He also asserts Higbees failed in their burden of showing the unconscionability of the provision, and that the doctrines of judicial estoppel and "the law of the case" prohibit Higbees from disputing the validity of the liquidated damages provision.

8

¶22    While it is true Higbees' argument regarding the unconscionability of the liquidated damages clause is raised for the first time on appeal, this is due to the fact our decision in *Arrowhead* was issued well after the District Court proceedings were concluded.  Further, Kelman did dispute the validity of the liquidated damages provision in the District Court.  Thus, we will address it here.

¶23    Liquidated damages clauses are presumed enforceable.  The party seeking to avoid the clause has the burden of proving the clause is unconscionable. *Arrowhead*, ¶ 54.  Under *Arrowhead*, the proper method to analyze a liquidated damages clause is "from the perspective of whether or not the clause is unconscionable as indicated by the nature of the bargaining process between the parties." *Arrowhead*, ¶ 48.  Unconscionability is a two-prong determination: 1) whether the clause fits the doctrine of contract of adhesion such that the weaker bargaining party had no meaningful choice regarding acceptance of the provisions; and 2) whether the contractual terms are unreasonably favorable to the drafter, usually the party with superior bargaining power. *Arrowhead*, ¶ 48.

¶24    Higbees offered no evidence to suggest this was a contract of adhesion or that they were the weaker party in the bargaining process.  Nor did they offer authority in the District Court for the proposition that the absence of actual damages precludes an award of liquidated damages.  However, as noted above, the parties did not have the benefit of our *Arrowhead* decision when presenting their arguments in the District Court, so these failures are understandable.  In fairness to the parties, we therefore deem it appropriate to remand for further consideration the question of whether the liquidated damages clause, as interpreted

9

above and in light of *Arrowhead*, is enforceable. In this connection, the court shall consider on remand whether Kelman suffered actual damages as a result of Higbees' violation of the exclusive agreement provision, and if not, whether actual damages under these circumstances are a pre-requisite to the enforcement of the liquidated damages provision.

¶25 Last, Higbees argue Kelman gave no consideration for the extension of the Agreement and therefore no valid contract existed at the time of the alleged breach, thus precluding summary judgment on the Agreement in favor of Kelman. Higbees raise this argument for the first time on appeal and, as such, we decline to address its merits. *Nason v. Leistiko,* 1998 MT 217, ¶ 18, 290 Mont. 460, ¶ 18, 963 P.2d 1279, ¶ 18. We do not find Higbees' plea for an exception to this rule persuasive.

¶26 Accordingly, we reverse the District Court's grant of summary judgment in favor of Higbees and remand for further proceedings as herein set forth.

## ISSUE 2

¶27 Did the District Court err when it awarded prejudgment interest to AMC?

¶28 AMC presented a claim separate and apart from Kelman's claim for liquidated damages. It sought actual damages in the sum of $208,222.00, representing the amount by which Higbees underpaid their 40 percent profit share obligation under the Agreement. However, the jury returned a verdict on this claim for only $82,000.00. The District Court ruled AMC was entitled to prejudgment interest on this sum, pursuant to § 27-1-211, MCA, which reads:

Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

¶29 Higbees argue the amount of recovery was not capable of being made certain prior to the jury's verdict. Higbees cite to the jury's verdict of $82,000.00, pointing out this figure was different than the amount of damages advanced by either party, and substantially less than AMC's claim of $208,222.00. Higbees rely on the proposition that prejudgment interest cannot be given when the awarded damages are less than what the party requested.

¶30 AMC, citing to the mathematical formula provided by the Agreement, contends the damages were capable of being made certain. Relying on *Price Bldg. Serv. v. Holms* (1985), 214 Mont. 456, 693 P.2d 553, AMC contends Higbees' partially successful attempt to offset damages does not defeat a claim for prejudgment interest.

¶31 If a claim is certain or can be ascertained by calculation, § 27-1-211, MCA, permits an award of prejudgment interest. In order for prejudgment interest to be awarded pursuant to this statute, three criteria must be met: 1) an underlying monetary obligation exists; 2) the amount of recovery is capable of being made certain by calculation; and 3) the right to recover the obligation vests on a particular day. *Morning Star Enters. v. R.H. Grover, Inc*. (1991), 247 Mont. 105, 116, 805 P.2d 553, 559.

¶32 This Court has declined to allow an award of prejudgment interest in cases where the judgment awarded is less than the claimant sought in damages and was not the result of a readily calculable offset. *See Jim's Excavating Serv. v. HKM Assocs.* (1994), 265 Mont.

11

494, 878 P.2d 248 (prejudgment interest not allowed where plaintiff's expert testified at trial damages were $510,899.00 and jury awarded $381,000.00); *Northern Mont. Hosp. v. Knight* (1991), 248 Mont. 310, 811 P.2d 1276 (prejudgment interest not allowed on counterclaim where jury verdict did not coincide with any amount set out as damages by defendant); *Maddux v. Bunch* (1990), 241 Mont. 61, 784 P.2d 936 (prejudgment interest not allowed where plaintiff claimed damages of $35,614.08 and jury awarded $23,378.95); *McPherson v. Schlemmer* (1988), 230 Mont. 81, 749 P.2d 51 (uncertainty of amount of damages shown by difference between what Plaintiff claimed in complaint and at trial, and what jury awarded precluded award of prejudgment interest); *Northwestern Natl. Bank v. Weaver-Maxwell, Inc*. (1986), 224 Mont. 33, 729 P.2d 1258 (prejudgment interest not allowed where defendants sought $2,000,000.00 in counterclaim, asked for $3,000,000.00 at trial, and jury awarded $300,000.00); *Swenson v. Buffalo Bldg. Co.* (1981), 194 Mont. 141, 635 P.2d 978 (prejudgment interest not allowed where plaintiff claimed damages of $43,917.15 and jury awarded $25,000.00). This rule applies in breach of contract actions as well. *See Carriger v. Ballenger* (1981), 192 Mont. 479, 628 P.2d 1106 (amount of damages upon breach of contract action not clearly ascertainable until determined by trial court; therefore, erroneous award of prejudgment interest required remand).

¶33    In contrast, if the amount owed is reduced by a valid set-off or counter-claim, which can be determined by calculation, interest is then normally allowed on the balance due after deductions of the offsetting amounts and payments that may already have been made. *Price*, 214 at 468, 693 P.2d at 559.

¶34 Here, we are unable to determine from the record how the jury reached its award of $82,000.00, and the parties are likewise unable to explain it. The difference between the amount AMC requested and the actual award is $126,222.00, an amount which does not correlate to any offset advanced by Higbees.

¶35 Since the jury awarded less than AMC claimed it was due, and there is no explanation for the offset the jury applied, the damages were not capable of being made certain by calculation, and thus, the District Court erred when it awarded prejudgment interest to AMC.

## CONCLUSION

¶36 We reverse the District Court's entry of summary judgment in favor of Higbees and remand for further proceedings consistent with this Opinion. In addition, we remand with instructions to vacate the award of prejudgment interest in favor of AMC.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART