DA 12-0766

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 240

VERNON L. CALDWELL and LAURA J. CALDWELL,
individually and by and through their attorney-in-fact
CARRIE HELLER,

      Plaintiffs and Appellees,

   v.

CLIFFORD CODY SABO, also known as CODY
SABO, individually and doing business as
SABO BROTHERS CONSTRUCTION, INC.,
a Montana Corporation,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV-12-111
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Arthur V. Wittich, Margaret M. Reader; Wittich Law Firm, P.C.;
Bozeman, Montana

      For Appellee:

            Loren J. O'Toole, Brad W. Fjeldheim; O'Toole Law Firm;
Plentywood, Montana

                    Submitted on Briefs:  July 10, 2013

                            Decided:  August 27, 2013

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Clifford Cody Sabo and Sabo Brothers Construction (collectively "the Sabos") appeal from the order entered by the Seventh Judicial District Court, Richland County, granting a preliminary injunction against them in favor of Vernon L. and Laura J. Caldwell ("the Caldwells"). We reverse and remand for further proceedings consistent with this Opinion.

¶2 The Sabos present two issues on appeal:

¶3 1. Did the District Court err in granting a preliminary injunction pursuant to § 27-19-201, MCA?

¶4 2. Did the District Court err in waiving a written undertaking pursuant to § 27-19-306, MCA?

¶5 We will not address the Sabo's second issue because we have determined that the District Court erred in granting the Caldwells a preliminary injunction.

## Factual and Procedural Background

¶6 The Caldwells own real property in Richland County which contains a rock substance known as scoria. Scoria is located in a relatively small portion of the United States including eastern Montana, northern Wyoming, and western North Dakota. *See Farley v. Booth Bros. Land & Livestock Co.*, 270 Mont. 1, 4, 890 P.2d 377, 379 (1995). Although it is not considered a mineral, scoria is valuable in road construction— particularly roads used for oil and gas exploration. *Farley*, 270 Mont. at 5-8, 890 P.2d at 379-80.

2

¶7     On May 1, 2011, the Caldwells and the Sabos entered into a written lease agreement ("Lease") for the excavation of scoria on the Caldwells' land. Specifically, the agreement granted the Sabos an exclusive "Right and Lease" to enter the Caldwells property to "strip, develop, process, explore, excavate, crush, stockpile and store, remove, and sell for its own account Scoria from the [Caldwells'] lands." The Sabos agreed to pay the Caldwells "a royalty rate of $3.00 per yard for all Scoria sold from [the Caldwells'] land." The Lease terminated on May 1, 2014, and was silent as to when royalty payments were to be made.

¶8     Until January 2012, the Sabos made periodic royalty payments to the Caldwells depending upon when the Sabos were able to sell the scoria and when their company was paid. The payments were neither monthly nor at regular intervals. Since entering into the Lease in May of 2011, the Caldwells have been paid more than $300,000 in royalties. However, between January 12, 2012, and August 9, 2012, the Caldwells did not receive any royalty payments at all. Cody Sabo testified that during this period scoria sales were either substantially decreased or non-existent.

¶9     On July 13, 2012, counsel for the Caldwells sent Cody Sabo a letter demanding payment for any mined scoria. Included with the letter was an addendum to the Lease which would require monthly royalty payments to the Caldwells. The Sabos did not sign the addendum; however, the Sabos made royalty payments to the Caldwells of $12,000 on August 9, 2012, $5,000 on August 19, 2012, and $8,000 in September 2012.

¶10     On September 17, 2012, the Caldwells filed their Complaint alleging that the Sabos breached the Lease by failing to pay royalties in a timely manner. The Complaint

alleged that the Sabos sold 136,328 yards of crushed scoria as of June 11, 2012, for which the Sabos owe the Caldwells $408,984. The Caldwells acknowledged in their Complaint that they received payments totaling $268,678 from March 2011, to January 2012, and that they received payments of $12,000 on August 9, 2012, $5,000 on August 19, 2012, and $5,000 in late August 2012. Thus, the total amount of royalty payments received by the Caldwells from the Sabos was $290,678. The Caldwells claimed, however, that the Sabos still owe them an additional $118,306. The Caldwells have asserted claims of breach of contract, unjust enrichment, and conversion. The Caldwells request monetary damages and a permanent injunction against the Sabos to prevent the Sabos from removing scoria from their property.

¶11 In their Answer, the Sabos denied that they have not paid the Caldwells for the scoria sold. The Sabos asserted that the Lease was silent as to when and how royalties were to be paid and that they are not in breach of the Lease. The Sabos specifically contested the amount of royalties that the Caldwells claim is past due and owing.

¶12 On the same day the Caldwells filed their Complaint, they filed an application for a temporary restraining order and preliminary injunction to prevent the Sabos from entering the Caldwells' property and removing scoria. On September 27, 2012, the District Court issued a temporary restraining order and scheduled a show cause hearing. The order was subsequently modified to allow the Sabos to access the property for the limited purpose of removing their equipment.

4

¶13　The court conducted a show cause hearing on October 25, 2012. During the hearing, the unrefuted testimony of Vernon Caldwell was that the lawsuit was only about money. Specifically, Vernon Caldwell testified as follows:

> Q: And isn't it also true that you filed this lawsuit because you believe that you haven't been paid all the royalties due you?
> A: All the royalties have not been paid.
> Q: And so isn't it true that's why you filed this lawsuit?
> A: Yes.
>
> . 　 . 　 .
>
> Q: So this lawsuit is about the payment of money, correct?
> A: Yes.

¶14　Cody Sabo testified that, at the time the temporary restraining order was issued, there were stockpiles on the Caldwells' property of approximately 20,000 cubic yards of crushed scoria valued at $320,000, and 30,000 cubic yards of processed sand valued at $300,000. Sabo further testified that he has been unable to access and sell these stockpiles because of the court's restraining order. Sabo described for the court the nature of a crushing/mining operation, characterizing his business as having significant "upfront" costs required to get a pit "up and running," with benefits not acquired until near the end of the operation. Sabo testified that the operation was nearing the end on the Caldwells' property when the temporary restraining order was issued. Sabo also explained what some of the "upfront" costs of a scoria operation are:

> A: Sir, you have to pay engineers for permitting; you have to pay a reclamation bond to the DEQ; you have to have all of your insurance in place which includes Unemployment, Worker's Comp, General Commercial Liability and other types of specialty crushing insurance; you have to have MSHA compliance. The list goes on and on.
> Q: And you also have to get some equipment out there?

5

A: Yes, sir. We haven't even talked about the crushing equipment, the large scale heavy equipment. The diesel cost alone can be $70,000 a month sometimes.

Q: So this is basically a mining operation with a crushing operation as well?

A: Yes, sir.

Q: And heavy equipment is needed.

A: Yes, sir.

Sabo further testified that he can only pay the royalties from his sales:

Q: And when would you pay them?

A: I like to pay them when I can so that the company doesn't go bankrupt. I have a lot of bills to pay; I pay them all and keep the business operating and get them all of their money. I enjoy giving them money; it makes me happy.

Q: So do you have to wait until you actually sell the scoria?

A: Yes, sir; not only wait for that, but I also have to wait until the company has paid us, which at sometimes it's been as long as 10 months before we've received payment.

¶15 According to Sabo's testimony, the demand for scoria is very seasonal and the mining and production of scoria is accordingly "[e]xtremely competitive" and "opportunistic." Sabo also testified that when "the oil companies release their bid packs, the location builders bid on that and thereby buy the scoria from us. So when they call, it's extremely seasonal. You have to be able to grab a sale when you can so to speak."

¶16 The District Court determined that the Caldwells had made a prima facie case that the Sabos had not paid them for all the scoria sold. The District Court further found that the Caldwells would suffer irreparable injury, "for which money damages could not compensate," and that restoration of the status quo once the scoria was removed would be unlikely. Although recognizing that the Lease "is silent as to when the Sabos are to pay the Caldwells," the District Court concluded that "the Sabos are violating the Caldwells'

6

rights by prima facie selling scoria from the Caldwells' lands without paying the Caldwells the agreed-upon $3.00/yard of 'all Scoria sold.' "

¶17    Applying the criteria in § 27-19-201, MCA, and the four-factor test set forth in *Van Loan v. Van Loan*, 271 Mont. 176, 895 P.2d 614 (1995), the District Court concluded that money damages would not adequately compensate the Caldwells and that enjoining the alleged unpaid depletion of the Caldwells' scoria was an appropriate remedy.  The District Court thereupon entered its written order enjoining the Sabos from hauling or selling any scoria from the Caldwells' land and, "in the interest of justice," waived the requirement that the Caldwells file a written undertaking.  The Sabos appeal.

### Standard of Review

¶18    An order granting an injunction is immediately appealable, notwithstanding that the merits of the controversy remain to be determined.  M. R. App. P. 6(3)(e).  District courts are vested with a high degree of discretion to grant or deny preliminary injunctive relief.  *Pinnacle Gas Res. v. Diamond Cross Prop.*, 2009 MT 12, ¶ 12, 349 Mont. 17, 201 P.3d 160 (citing *Yockey v. Kearns Properties, LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, 106 P.3d 1185; *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 11, 319 Mont. 132, 82 P.3d 912).  We will only disturb a district court's decision regarding a preliminary injunction upon a showing of a manifest abuse of discretion.  *Sandrock v. DeTienne*, 2010 MT 237, ¶ 13, 358 Mont. 175, 243 P.3d 1123 (citing *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 9, 348 Mont. 68, 199 P.3d 810; *Sweet Grass Farms v. Board of County Com'rs*, 2000 MT 147, ¶ 20, 300 Mont. 66, 2 P.3d 825).  "A manifest abuse of discretion is one that is obvious, evident, or unmistakable."  *Shammel*, ¶ 12.

7

¶19 Further, "[i]n determining the merits of a preliminary injunction, it is not the province of either the District Court or this Court on appeal to determine finally matters that may arise upon a trial on the merits." *Yockey,* ¶ 18 (citing *Sweet Grass,* ¶ 38). "[O]ur analysis 'is not intended to express and does not express any opinion about the ultimate merits' of the underlying case." *Sandrock,* ¶ 13 (quoting *Benefis Healthcare v. Great Falls Clinic,* 2006 MT 254, ¶ 19, 334 Mont. 86, 146 P.3d 714). In addition, where a district court issues an injunction based on conclusions of law, we review those conclusions for correctness. *Cole,* ¶ 9; *Yockey,* ¶ 12; *Sweet Grass,* ¶ 21.

**Discussion**

¶20 *Did the District Court err in granting a preliminary injunction pursuant to § 27-19-201, MCA?*

¶21 The Caldwells argue that they have made a prima facie showing that they have not been paid for all the scoria sold from their property. According to the Caldwells, this prima facie showing supports all three of their claims, which would include monetary damages for breach of the Lease and injunctive relief to prevent performance of the Lease. The Caldwells maintain that they are likely to suffer irreparable injury through the removal of scoria by the Sabos and that their injury outweighs the damage to the Sabos.

¶22 The Sabos argue that the facts of this case do not warrant a departure from the longstanding rule that injunctive relief is not appropriate in the context of contract claims for money damages. The Sabos maintain that the Lease specifies the amounts to be paid and that monetary damages can be easily determined. Lastly, the Sabos argue that the

8

District Court incorrectly applied the criteria of § 27-19-201, MCA, and the *Van Loan* factors.

¶23 Preliminary injunctions may be issued by a district court when a party establishes any one of the five subsections set forth in § 27-19-201, MCA. The subsections of the statute are disjunctive, thus only one subsection need be met for an injunction to issue, and "findings that satisfy one subsection are sufficient." *Stark v. Borner*, 226 Mont. 356, 359-60, 735 P.2d 314, 317 (1987). Although it is not exactly clear upon which subsection the District Court issued its preliminary injunction, the parties have argued subsections (1) and (2), and the District Court has additionally analyzed subsection (3). We will, therefore, discuss these three subsections.

¶24 The relevant subsections provide that a preliminary injunction may be granted in the following cases:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual . . . .

Section 27-19-201, MCA.

¶25 As to subsection (1), it does not appear that the Caldwells are entitled to the final injunctive relief demanded. Section 27-19-102, MCA, provides that final injunctive relief may only be granted in an action for breach of an obligation if pecuniary

9

compensation would not afford adequate relief; if it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; if the restraint is necessary to prevent multiple proceedings; or if the obligation arises from a trust. It is well established that, generally, relief for a breach of contract is limited to monetary damages. "A party to a contract may choose to breach the contract and to pay damages for that breach." *American Music Co. v. Higbee*, 1998 MT 150, ¶ 13, 289 Mont. 278, 961 P.2d 109. Section 27-1-311, MCA, provides that "[f]or the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby . . . ." Further, "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon." Section 27-1-312, MCA.

¶26 Here, the Caldwells entered into the Lease for the purpose of earning money from the sale of scoria mined and produced from their property. Pecuniary compensation for the removal of the scoria was what the Caldwells initially contemplated. It thus is evident that monetary damages will provide the full relief to which the Caldwells are entitled. This conclusion is further supported by a careful examination of the testimony provided at the hearing, allegations contained in the Caldwells' Complaint, and the relief the Caldwells have requested.

¶27 It cannot be reasonably argued that the underlying action, and all requested relief emanating therefrom, is anything other than a contract dispute. That the Caldwells have requested injunctive relief to prevent terms of the contract from being enforced, does not

10

transform this action into one of equity. The testimony provided by Vernon Caldwell unquestionably makes clear that the Caldwells are interested in receiving monetary damages only. They have not indicated that they want to keep the scoria on their property and not have it mined. In fact, it appears that the Caldwells are looking at other competitive bids for removal of the scoria. Moreover, counsel for the Caldwells, in their final remarks to the District Court, suggested that the District Court could continue to allow the Sabos to enter the Caldwells' property and remove the scoria if the court were to oversee sales and income from the operation. This was not agreeable to the Sabos. The Sabos maintained that having sale proceeds deposited with the court, while the parties argued about amounts owing, would be too onerous for the Sabos.

¶28 Based upon the foregoing, it is clear that these proceedings emanate from an alleged breach of contract and, in the absence of circumstances justifying otherwise, warrant only monetary damages.

¶29 Subsection (2) provides that a preliminary injunction may issue when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant. Section 27-19-201(2), MCA. The Caldwells allege, and the District Court found, that the Caldwells would be caused irreparable injury by the "unpaid depletion of scoria from [their] property . . . ." However, the depletion or removal of scoria from their property is exactly what the Caldwells agreed to when they entered into the Lease. In return for the removal of scoria, the Caldwells were to receive certain pecuniary compensation. Thus, the Caldwells themselves contemplated that pecuniary compensation was adequate relief pursuant to the terms of the Lease.

11

They cannot now consistently advance a position that they will be irreparably harmed if scoria is removed. Additionally, it is well established that "[m]oney damages are not considered irreparable harm, because money damages may be recovered in an action at law without resort to equity." *American Music*, ¶ 15 (citing *Dicken v. Shaw*, 255 Mont. 231, 236, 841 P.2d 1126, 1129 (1992)). Significantly, there has been no allegation made that the Sabos are insolvent or that the Sabos are dissipating their assets, fraudulently or otherwise. *See Van Loan*, 271 Mont at 182-83, 895 P.2d at 619.

¶30 Finally, we reach a similar conclusion with respect to subsection (3). That section provides that a party is entitled to a preliminary injunction when an adverse party is doing or threatening to do an act in violation of the applicant's rights which would tend to render the judgment ineffectual. Section 27-19-201(3), MCA. Although the Caldwells have not demonstrated or argued that this section applies, the District Court determined that "[i]t appears that the Sabos are violating the Caldwells' rights by prima facie selling scoria from the Caldwells' lands without paying the Caldwells' [sic] the agreed-upon $3.00/yard of 'all Scoria sold.'" The provisions of the Lease, however, allowed for the removal of scoria from the Caldwells' property. Further, the record is devoid of any facts which would support a conclusion that the Sabos are threatening to not pay for the scoria sold. It is important to recall that the Sabos contend they have not breached the terms of the Lease and that all monies owing the Caldwells under the terms of the Lease have been paid. Moreover, as has previously been discussed, money damages would be effectual to compensate the Caldwells for any breach.

12

¶31 In conclusion, we observe that the District Court applied the four-factor test set forth by this Court in *Van Loan*. Van Loan initiated a tort action against his father to recover damages for his father's sexual abuse of Van Loan when Van Loan was a child. Van Loan sought an injunction to prohibit his father from distributing his assets and thereby render any judgment ineffectual. We established a four-part, conjunctive test "to determine whether a preliminary injunction should issue when a party's monetary judgment may be made ineffectual by the actions of the adverse party thereby irreparably injuring the applicant." *Van Loan*, 271 Mont at 182, 895 P.2d at 617. We cautioned that "our analysis is to be narrowly interpreted. The courts cannot countenance routine, meritless, or vindictive petitions for preliminary injunctions of this sort. An injunction is to be issued only under the most clear facts that fully satisfy the four-part test . . . ." *Van Loan*, 271 Mont. at 183, 895 P.2d at 618.

¶32 It is not necessary for resolution of the instant proceedings to assess the merits of applying *Van Loan* to a breach of contract action. We observe, nevertheless, that the Caldwells have not alleged that the Sabos are dissipating assets or that any judgment obtained against the Sabos may be rendered ineffectual absent the granting of equitable relief. We have already determined that the Caldwells are not able to demonstrate irreparable injury. They therefore could not establish a basis for injunctive relief pursuant to *Van Loan*.

¶33 We hold that the District Court erred in granting the Caldwells a preliminary injunction in a breach of contract action when pecuniary compensation was contemplated and would afford adequate relief. In so doing, we have determined that the District

Court's conclusions of law were incorrect and there was, consequently, a manifest abuse of discretion.

¶34    Reversed and remanded for further proceedings consistent with this Opinion.

/S/ LAURIE McKINNON

We Concur:

/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE