**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CUST-O-FAB SERVICE COMPANY, LLC,

        Plaintiff-Appellant,

v.

ADMIRAL INSURANCE COMPANY,

        Defendant-Appellee.

No. 04-5092

N.D. of Okla.

(D.C. No. CV-03-495-K(M))

**ORDER AND JUDGMENT** *

Before **EBEL**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

Cust-O-Fab Service Company appeals an order of summary judgment granted in favor of Admiral Insurance Company. In this insurance coverage dispute, the district court held the insurance policy between Admiral and Cust-O-Fab did not require Admiral to defend Cust-O-Fab in a Texas lawsuit asserting contract and tort claims.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Cust-O-Fab asserts the district court made four errors: (1) finding that a breach of contract exclusion barred Cust-O-Fab's policy claims; (2) determining that Admiral had no duty to defend Cust-O-Fab because it was unlikely Cust-O-Fab would be held liable for negligent misrepresentation in the Texas lawsuit; (3) prematurely adjudicating Admiral's obligation to indemnify Cust-O-Fab; and (4) permitting Admiral to assert an untimely contract exclusion in its motion for summary judgment.

We REVERSE and REMAND for further fact finding regarding the precise meaning of the contract exclusion clause, the application of the administration clause, Admiral's duty to defend the negligence claim in the Texas lawsuit, and Admiral's duty to indemnify. We AFFIRM the district court's conclusion that Admiral was not estopped from raising its contract exclusion argument at the summary judgment stage.

## I. Background

*The Parties.* Cust-O-Fab is an Oklahoma limited liability company. In 2001, Cust-O-Fab purchased commercial general liability insurance (the "Policy") from Admiral Insurance, a Delaware insurance company. The Policy included coverage for Cust-O-Fab's administration of its employee benefits programs, including a company health care plan for its employees.

To help it administer its benefits programs, Cust-O-Fab contracted with Spectrum Risk Management Services, a company that specialized in providing third party administrative services. Spectrum, in turn, retained two companies to assist it with the health benefits portion of its services. First, it contracted with Beech Street Corporation as the preferred provider organization. Beech Street was to arrange for the provision of health care services for covered employees. Second, after the series of events leading to this lawsuit, Spectrum retained Medical Services Management (MSM) to provide case management services for claims made under the employee health policy.

*The Policy.* The Policy was a commercial liability insurance policy that covered a number of business risks. As part of the Policy, Cust-O-Fab purchased an endorsement for Employee Benefits Liability Coverage (the "EBL Endorsement"). The EBL Endorsement was designed to cover liabilities incurred in the process of the "administration" of employee benefits programs, including Cust-O-Fab's health care plan.

In particular, the EBL Endorsement covered the following liability:

> We will pay those sums which you become legally *obligated to pay* as damages sustained by any employee, former employee, prospective employee or the beneficiaries or legal representatives thereof caused by your negligent act, error or omission or any other person for *whose acts you are legally liable* in the "*administration*" of your "Employee Benefits Programs" in the "policy territory."

App. 139 (emphasis added). The Policy defined "administration" as "(a) providing interpretations and giving counsel to your employees regarding your 'Employee Benefits Programs'; (b) handling records in connection with your 'Employee Benefits Programs'; (c) the enrollment, termination or cancellation of employees under your 'Employee Benefits Programs.'" App. 141.

The Policy contained two other important limitations. First, it excluded "[d]amages arising out of a negligent act, error or omission which . . . you knew or should have known might result in a claim." Second, it barred coverage for certain contract disputes, stating that it did "not apply to . . . any loss or claim arising out of a failure of performance of *any contract* by an *insurer*." App. 139-40) (emphasis added).

*The Accident.* On August 19, 2001, John Cummings, a former Cust-O-Fab employee, was severely injured in an automobile accident in Texas. He was treated for his injuries at an Amarillo, Texas, facility of the Northwest Texas Healthcare System (the Hospital). When he was released, his hospital bill totaled more than $430,000.

Cummings's injuries were so serious he was incapacitated for a period of time after the accident. Consequently, two days after he was hospitalized, on August 21, 2001, John Cummings's brother Travis, who was a Cust-O-Fab employee, located a copy of the Cust-O-Fab benefits policy in his employee

handbook and provided it to the Hospital. On August 23, 2001, Beech Street, in its capacity as preferred provider organization, sent correspondence to the Hospital stating a seven-day stay at the hospital appeared to be appropriate. The letter, however, advised the Hospital that Beech Street was not making a conclusive determination of benefits coverage and would not guarantee any payments of Cummings's expenses.

*The Payment Dispute.* On August 31, 2001, after a series of negotiations between MSM (on behalf of Spectrum) and the Hospital, the Hospital agreed to provide medical services at a reduced fee. The agreement was memorialized in a document signed by MSM, which instructed the Hospital to send bills to Spectrum. App. 421. Cummings also formally assigned his benefits under the health plan to the Hospital on October 4, 2001.

Notwithstanding the MSM document, on November 14, 2001, Spectrum sent a written notice to Cummings and the Hospital notifying them that Cummings's medical expenses would not be covered. Spectrum asserted Cummings's injuries would not be covered under the health plan because his accident was the result of the "illegal use of alcohol." App. 482. Although the Hospital subsequently disputed whether Cummings was intoxicated at the time of the accident, Spectrum refused coverage. Consequently, the Hospital initiated litigation in Texas state court in March 2003 against Cust-O-Fab and Spectrum

-5-

based upon theories of breach of contract, negligent misrepresentation, promissory estoppel, breach of implied contract, violation of the Texas PPO Prompt Payment Act, and common law and statutory claims of bad faith.

*The Coverage Dispute.* After the Hospital filed suit, Cust-O-Fab notified Admiral that it had been sued and that it expected Admiral to cover litigation defenses costs pursuant to the Policy's coverage for liability arising from Cust-O-Fab's "administration" of its employee benefits programs. Admiral denied a duty to defend in the lawsuit, asserting in a letter that "the denial of the claim for medical benefits is not included in the definition of 'administration' as defined in the policy." App. 303; 308.

Cust-O-Fab commenced litigation based on diversity jurisdiction in the Northern District of Oklahoma, seeking a declaratory judgment that the claims asserted by the Hospital were covered under the Policy.[1] After reviewing cross-motions for summary judgment, the district court concluded that the Policy did not cover the costs of defending Cust-o-Fab in the Texas lawsuit.

## II. Discussion

---

[1] Diversity jurisdiction was invoked pursuant to 28 U.S.C. § 1332. As such, Oklahoma choice of law rules apply. Under Oklahoma law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. 15 § 162. Because the contract at issue here was made in Oklahoma and was to be performed in Oklahoma, Oklahoma substantive law applies.

We review the district court's order granting summary judgment *de novo* under the same standards employed by the district court under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper only if there is no disputed issue of material fact, and the moving party is entitled to judgment as a matter of law. We must examine the record in the light most favorable to the party opposing the motion. *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990).

This appeal raises three sets of issues. The first goes to whether the district court properly concluded that the Policy's "contract" exclusion applied to the Hospital's claims against Cust-O-Fab. Specifically, does the Policy apply to the circumstances here where Cust-O-Fab or its agents made payment promises to the Hospital? The second is procedural. Did the district court err in allowing Admiral to raise its contract exclusion on summary judgment? The third is a question of law: did the district court prematurely adjudicate the duty to indemnify?

We conclude that it was error for the district court to grant summary judgment. While we generally agree with many of the court's determinations regarding the meaning of the Policy, we believe that significant fact questions remain, making summary judgment inappropriate. We therefore remand for further proceedings.

## A. Interpretation of the Policy

The central issue on appeal is whether the Policy's "contract" exclusion applies to the Hospital's claims against Cust-O-Fab as pleaded in the Texas lawsuit. To resolve this question, we turn first to the language of the Policy. We then address several additional interpretation questions raised by the parties on appeal.

### 1. Does the Policy's Contract Exclusion Apply?

Cust-O-Fab argues the district court fundamentally misconstrued the Policy in applying the EBL Endorsement contract exclusion. The district court relied on a portion of the Policy that expressly excludes "any loss or claim arising out of a failure of performance of any contract by an *insurer*." App. 140 (emphasis added). With no explanation, the district court concluded the word "insurer" should be read as "*insured*."

Having so concluded, the district court agreed with Admiral that the Texas lawsuit involved a contract claim against Cust-O-Fab, and therefore applied the exclusion to deny coverage. The question on appeal is whether the contract exclusion applies to the Hospital's claims for purposes of summary judgment.

We begin with the plain language of the Policy. *Littlefield v. State Farm Fire and Cas. Co.*, 857 P.2d 65, 69 (Okla. 1993) (holding "a policy is ambiguous only if it is susceptible to two interpretations; [i]f the language is unambiguous,

it is construed in its plain and ordinary sense.") Quite simply, there is little ambiguity as to what the contract says— the printed text employs the word "insurer." What Admiral argues, and the district court apparently accepted, is not that the term "insurer" is ambiguous standing alone but ambiguous when the Policy as a whole is examined. Cust-O-Fab argues, however, there is no ambiguity. It asserts that the natural interpretation of the exclusion language applies to third-party insurance providers such as health, life and unemployment insurers, and not to Cust-O-Fab. Cust-O-Fab argues that this interpretation of the Policy makes sense because many different types of insurance will be provided by other companies. Admiral would not be insuring the performance of those insurance carriers as a part of its EBL Endorsement and naturally would want to exclude any possibility it could be bound under the Policy.

Ordinarily, that would be the end of our inquiry. Admiral, however, argues—and the district court agreed—that the contract term must be understood to refer to the "insured." It claims that a contrary understanding would be "frivolous" since the term would then refer back to Admiral, and Admiral cannot insure itself. We disagree. First, the Policy refers to "an insurer" and that term can plausibly have the meaning supplied by Cust-O-Fab. Nowhere else in the Policy does Admiral refer to itself as the "insurer"; rather Admiral is referred to in the Policy as "we, us and our." Second, the Policy also defines and refers to

Cust-O-Fab using the term "you" throughout the policy, not the term "insured." Third, the term "insured" is expressly defined by the Policy as "any person or organization" designated by the Policy. App. 108. And finally, the EBL Endorsement specifically covers Cust-O-Fab and "any other person for whose acts you [Cust-O-Fab] are legally liable" for the administration of the employee benefits program. App. 139. Thus, no obvious linguistic reason or drafting convention arising from the Policy would suggest that the term "insurer" was a typographical error.

For these reasons, we cannot agree with the district court that the Policy's contract clause unequivocally applies to the Hospital's claims. It may well be that the Policy should be read the way the Admiral posits. No claim of contract ambiguity has been raised, nor has Admiral raised a claim that the contract must be reformed to reflect its interpretation of the term "insurer." But on this record, summary judgment was improper because a significant fact question remains as to the meaning of the Policy's terms.

### 2. Does the Conduct at Issue Fall within the Definition of "Administration"?

A related question, with its answer partially contingent upon the analysis above, remains for remand. That question is whether the Policy's "administration" provision applies to the interaction between Cust-O-Fab and its agents and the Hospital. While the district court found that Cust-O-Fab was

acting pursuant to the administration provision when it initially informed Cummings and Hospital that Cummings was covered under the Plan, the court went on to find that it was the alleged breach of contract with the Hospital that was the cause of the Hospital's harm, not the negligent interpretation of benefits. The district court never expressly addressed whether the definition of "administration" includes (1) the representations (by Spectrum and Beech Street) that form the basis for the Hospital's negligent misrepresentation claim or (2) the agreement negotiated by MSM for discounted fees, which underlies the contract claim.

Therefore, the district court must first determine on remand whether the Policy's contract exclusion applies to "insurers" or to Cust-O-Fab. Then, based on the facts of this case, whether the Policy's "administration" provision covered the acts and omissions of Cust-O-Fab and its agents in their interaction with the Hospital. If so, then Admiral owes Cust-O-Fab a duty of defense in the Texas lawsuit.[2]

_____

[2] The district court held that the conduct at issue in this case falls within the definition of "administration." Admiral cites *Maryland Casualty Co. v. Economy Bookbinding Corp. Pension Plan & Trust*, 621 F. Supp. 410 (D.N.J. 1985), to support its argument to the contrary, but we agree with the district court that this case does not weigh in Admiral's favor. In *Maryland Casualty*, the court reasoned that the term "administration" limits coverage to liability incurred "in relatively routine, ministerial acts performed in relation to the Pension Plan, and avoids coverage of liability incurred in the decision-making and monitoring

(continued...)

-11-

### 3. Does the Policy Cover the Negligent Misrepresentation Claims Asserted in the Texas Lawsuit?

The district court also found that since the breach of contract exclusion relieved Admiral of its duty to defend on breach of contract claims, the remaining negligence claims were not covered. In other words, because the negligent misrepresentation claim was simply a variation of the contract claim, it fell away with the contract exclusion.

We disagree that the contract exclusion necessarily applies to the Hospital's negligent misrepresentation claim. It is possible in the Texas lawsuit that Cust-O-Fab can be found liable for tort injuries above and beyond the Hospital's contract claim. Under Texas law, negligent misrepresentation is a separate and distinct claim from breach of contract. *Airborne Freight Corp. v. C. R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App. 1992). The tort of negligent misrepresentation requires:

- a representation made by the defendant in the course of business or in a transaction in which it has a pecuniary interest;

---

[2](...continued)
involved in managing the Plan's investments." *Id.* at 413. However, the claims at issue in the underlying suit in *Maryland Casualty* (embezzlement and violations of fiduciary duty and ERISA, among others) were, on the scale of acts from "ministerial" to "discretionary," clearly at the latter end. The same is not true here.

- the defendant supplied false information for the guidance of others in their business;

- the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

- the plaintiff suffered pecuniary loss by justifiably relying on the defendant's representation.

*Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 706 n.24 (Tex. 2002) (citing

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

While the Hospital's legal theories are not entirely clear, the negligent misrepresentation claim goes to the various conversations and communications by and among Spectrum, Beech Street and the Hospital in the aftermath of the accident. The contract claim, in contrast, appears to be based on MSM's negotiation with the Hospital which led to a reduced payment for the medical expenses. In addition, the Hospital has asserted tort damages for the entire amount it expended in caring for Cummings. The contract claim, however, asserted damages of only 80 percent of the total amount, reflecting the twenty percent discount negotiated by MSM.

Accordingly, on this record, we cannot determine with any certainty whether Cust-O-Fab will become "legally obligated to pay as damages" any sums to the Hospital based on either theory. On remand, the district court will need to address this issue in light of its resolution of the contract exclusion and the scope of the administration provision.

### 4. Does the Policy Indemnify Cust-O-Fab for Damages Asserted in the Texas Lawsuit?

Finally, Cust-O-Fab argues the district court misconstrued Admiral's duty to indemnify Cust-O-Fab in the Texas lawsuit.  Since we are remanding for further proceedings regarding Admiral's duty to defend, the question of Admiral's duty to indemnify should be reexamined in light of Admiral's duty to defend.

\* \* \*

In conclusion, we reverse and remand for further proceedings.  At the summary judgment stage, it was improper for the district court to decide, as a matter of law, that the Policy does not apply to the breach of contract and negligent misrepresentation claims asserted by the Hospital against Cust-O-Fab in the Texas lawsuit.

### B. Estoppel

The final issue is whether the district court abused its discretion in allowing Admiral to assert its contract exclusion for the first time in its motion for summary judgment.[3]  When asked during discovery to identify "all terms and

---

[3]Although there is no precedent directly on point, because this issue is a matter of simple case management, we will review the district court's decision for abuse of discretion.  We review decisions regarding amendment of pleadings, an analogous matter, for abuse of discretion.  *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999).  Discovery rulings,

(continued...)

conditions of the [denial]," Admiral responded, "please see Admiral's denial letter of October 9, 2002." App. 547. The letter did not mention the breach of contract exclusion specifically, but Admiral did refer to the EBL Endorsement as a whole. Only when it filed its summary judgment motion did Admiral cite the breach of contract provision as dispositive of the Cust-O-Fab claim.

Cust-O-Fab argues that in insurance coverage litigation, the insurer is estopped from later raising policy defenses not asserted in initial denials of coverage. *See*, *e.g., Federal Ins. Co. v. Stroh Brewing Co.,* 127 F.3d 563, 571 (7th Cir. 1997) (insurer's initial decision to deny coverage based on non-coverage estopped insurer from recourse to policy's exclusions, *after* court determined that claim fell within the policy's coverage); *North River Ins. Co. v. Huff*, 628 F. Supp. 1129, 1134 (D. Kan. 1985) (holding "[a]n insurer cannot handle a claim with knowledge of policy defenses indefinitely and must inform its insured of its disclaimer within a reasonable time" and "[n]otice to an insured is insufficient unless it makes specific reference to the policy defense being relied upon"); *Am. Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 588 (8th Cir. 2002).

---

[3](...continued)
another analogous matter, are also within the sound discretion of the district court. *See Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 853 (10th Cir. 1996).

The district court rejected Cust-O-Fab's estoppel argument. It found Admiral's initial letter of denial did not purport to provide the only possible reason for exclusion, because the letter clearly stated that "the acts or positions described herein [should not] be construed in any way as a waiver or an estoppel with respect to other matters of which Admiral . . . [has not] raised to date." App. 303.

As a basic matter, an insurer must disclose the rationale for coverage denial within a reasonable time. 7C APPLEMAN, INSURANCE LAW AND PRACTICE § 4694, p. 361 (1979). Additionally, notice to an insured is generally insufficient unless it makes specific reference to the policy defense being relied upon by the insurer. *Id.* at 353.

Here, however, we cannot conclude the district court abused its discretion by allowing Admiral to assert this defense in a motion for summary judgment. First, Cust-O-Fab can make no showing that it was prejudiced by responding to the defense at the summary judgment stage. The coverage of the three-page EBL Endorsement was at issue from the beginning of the litigation, and Cust-O-Fab cannot argue it was surprised by Admiral's reliance on a provision that so clearly goes to the facts alleged in the complaint for declaratory judgment. Second, the district court found that Admiral had not waived any Policy defenses in its denial letter. And, as a practical matter, the claims asserted by the Hospital pertain to

whether Cust-O-Fab or its third party administrators misrepresented the scope of the company's health insurance benefits by first agreeing to be responsible for Cummings's expenses, and then denying coverage. Thus, it is hard to conclude that Admiral waived an obvious defense, when it specifically reserved all of its defenses under the EBL Endorsement.

Accordingly, we hold that the district court did not abuse its discretion by allowing Admiral to assert the contract exclusion at the summary judgment stage of the case.

### III. Conclusion

Accordingly, the judgment of the district court is AFFIRMED in part and REVERSED in part, and we REMAND for further proceedings consistent with this order and judgment. On remand, the district court should consider (1) the meaning of the term "insurer" in the contract exclusion; (2) whether the administration provision applies to each of the various interactions between the Hospital and Cust-O-Fab and its agents; (3) if the contract exclusion does not apply, whether Admiral owes a duty to defend Cust-O-Fab on the Hospital's claims of negligence; and (4) whether Admiral has a separate duty to indemnify.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge